FAIRCHILD, *Appellant*, v. MASONIC HALL ASSOCIATION—HUNT, *Stockholder.*

1. **Corporation :** PERPETUAL SUCCESSION. A private corporation was invested by its charter with "perpetual succession." *Held*, that these terms in their natural and ordinary acceptation signify indefinite duration, and not merely continuous or uninterrupted succession for a limited time, and as in this instance they were unrestricted by other terms, the ordinary signification must prevail, and the corporation be held invested with the right to exist forever.

2. ———: DOUBLE LIABILITY: CONSTRUCTION OF GENERAL CORPORATION LAWS OF 1845 AND 1855. The 13th section of the general corporation law of 1845 declared that in all corporations "hereafter created," the corporators should be subject to a double liability, (R. S. 1845,

p. 233). In 1855 this law was revised, and the 13th section of the revised act, in precisely the same language, declared the same liability in all corporations "hereafter created." (R. S. 1855, p. 372.) The word "hereafter" when used in a statute, it was declared in the Revision of 1855, should be construed to mean "the time after the statute containing such term shall take effect." By another section of the same revision it was declared that all acts revised at that session of the general assembly should be taken and construed as repealing the acts previously in force, (R. S. 1855, p. 1026, § 20). The Masonic Hall Association having been incorporated in 1853; *Held*, that the double liability imposed upon its stockholders by the law of 1845 was removed by the repeal of that law in 1855; that the law as then re-enacted did not apply to any corporation created before its date, and therefore the stockholders of that corporation were not subject to a double liability. NORTON, J., Dissenting.

3. ———: DOUBLE LIABILITY UNDER CONSTITUTION OF 1865. The double liability imposed by the constitution of 1865 did not attach to stock issued prior to that date.

*Appeal from St. Louis Court of Appeals.*

AFFIRMED.

On the 5th day of June, 1864, Mrs. Anne L. Hunt became the owner of 400 shares of stock in the Masonic Hall Association of the par value of $8000. On the 5th day of June, 1869, the association issued its bonds to the amount of $60,000. The plaintiff became the owner of some of these bonds, and on the 1st day of April, 1876, sued and shortly afterward obtained judgment against the association upon them. Execution was duly issued on said judgment, and for want of property whereon to levy, was returned *nulla bona*. Plaintiff thereupon filed a motion against Mrs. Hunt for an execution against her as a stockholder in said association. Her stock was full paid, but plaintiff claimed the right to enforce a further liability equal to the par value of the stock. Mrs. Hunt resisted the motion on two grounds; 1st, that at the time the suit was brought the Masonic Hall Association had ceased to exist as a corporation, and the judgment rendered against it was therefore a nullity; 2nd, that the liability sought to be

enforced had never attached to her stock. The solution of the questions thus presented depends upon the construction of the following statutory and constitutional provisions. On the 12th day of February, 1853, the general assembly passed an act, the 1st section of which declared that John D. Daggett and others named "shall be and they are hereby created a body politic and corporate by the name and style of the Masonic Hall Association, * * by which name they and their successors shall have perpetual succession". &c. There was no other language in the act defining the duration of the corporate existence. Section 1 of the general corporation law in force at the time this act was passed contained the following provision: "Every corporation as such has power to have succession by its corporate name for the period limited in its charter, and when no period is limited, for 20 years." R. S. 1845 p. 231.

Section 13 of the same law was as follows: "In all corporations hereafter created by the legislature, unless otherwise specified in their character, in case of a deficiency of corporate property or estate liable to execution, the individual property, rights and credits of every member of the copartnership or body politic having a share or shares therein, shall be liable to be taken on execution to double the amount of his stock, and no more, for all debts of the corporation." Ib., p. 233. Section 13 of the general corporation law of 1855 was as follows: "In all corporations hereafter created by the legislature, unless otherwise specified in their charter, in case of a deficiency of corporate property or estate liable to execution, the individual property, rights and credits of every member of the copartnership or body politic having a share or shares therein, shall be liable to be taken on execution to double the amount of his stock, and no more, for all debts of the corporation." R. S. 1855 p. 372. Section 20 of the act of 1855 concerning the construction of the statutes was as follows: "All acts of a public, general and permanent na-

ture, revised at the present session of the general assembly, as soon as such acts shall take effect, shall be taken and construed as repealing the acts in force at the commencement of the present session of the general assembly, so revised." Ib., p. 1026. Section 8 of the same act was as follows: " Wherever the term 'hereafter' occurs (in any statute,) it shall be construed to mean the time after the statute containing such term shall take effect." Ib., p. 1024. Section 6, art., 8, constitution of 1865 was as follows : "Dues from private corporations shall be secured by such means as may be prescribed by law; but in all cases each stockholder shall be individually liable, over and above the stock by him or her owned, and any amount unpaid thereon, in a further sum at least equal in amount to such stock." Wag. Stat., p. 58. Section 13 of the general corporation law of 1865 was as follows: "If any execution shall have been issued against the property or effects of a corporation, and if there cannot be found whereon to levy such execution, then such execution may be issued against any of the stockholders to an amount equal in amount to the amount of stock by him or her owned, together with any amount unpaid thereon." Ib., 291.

The circuit court gave judgment for the plaintiff against Mrs. Hunt for $8,000, which judgment, on appeal to the court of appeals, was reversed. From the judgment of reversal the plaintiff appealed to this court.

*John C. Orrick* and *John H. Overall* for appellant.

*A. & J. F. Lee, Jr.* for respondent.

NAPTON, J.—The decision of the court of appeals in this case is based on the point, that the charter of the com-1. CORPORATION: pany, although containing the words "per-
perpetual succes-
sion.                petual succession," was limited by the general statute which confined the duration of all corporations, where there was no limit in the charter, to twenty years,

and as the suit against this corporation was brought after the expiration of the twenty years, the judgment against the corporation was a nullity, and, of course, execution against the stockholder could not issue upon a void judgment against the corporation.

That the word "perpetual" is frequently used in the sense of "continuous or uninterrupted" is well established by our lexicographers, and the practice of eminent writers and speakers. That another meaning, of indefinite duration, is also legitimate is equally clear, and the one or the other may be adopted, according to the context and the subject matter relative to which the word is used. The words "perpetual succession" are here used in the charter of a private corporation, and would naturally mean, if unrestricted by other terms, an indefinite duration.

That various charters were granted by the legislature with the words "perpetual succession," which were also restricted to a term of years designated in the same charter, can hardly lead to any conclusion as to such charters as contained the words "perpetual succession" without any such limitation. The additional limitation to a specified term would undoubtedly fix the duration of the corporation, notwithstanding the use of the words "perpetual succession," and require these words to be understood in the sense of continuous or uninterrupted succession, a meaning confessedly appropriate when the context or subject matter requires it. But such a construction does not lead to the conclusion that, in charters containing the words "perpetual succession" with no limitation upon the duration of the corporation, the legislature used these terms as equivalent to continuous or uninterrupted succession.

From 1845, when this provision in regard to charters which contained no limitation was first adopted, down to 1865, the session acts every year will be found to be crowded with charters of private incorporations, for schools, colleges, bridges, roads, library associations, literary and scientific associations, benevolent and religious associations,

&c. It is unsafe to base any conclusion upon the variety of terms used in these acts, some of which use the terms perpetual succession and others continuous succession. A vast number of these charters repeal the right of the legislature, a right already reserved in the general law on the subject of corporations, to make any alterations or repeal. If legislative construction of prior acts is entitled to any weight, it would seem that their action in regard to such charters as had merely the words perpetual succession, without any qualification, was entitled to consideration, as indicating that they did not use the words perpetual succession and continuous succession in the same sense. Take for instance the charter of the Hannibal & St. Joseph Railroad Company, passed in 1847, which has nothing more in it than the words perpetual succession. The legislature in 1851 directed the issue of bonds to the amount of $1,500,000, none of which could fall due before 1871, long after the expiration of the charter, supposing it to have had only a duration of twenty years. We have been referred to a great number of charters, where subsequent enactments imply an indefinite duration from the use of the words perpetual succession. In fact, this is the case in relation to charters of schools, colleges and library associations, without number. We decline, therefore, to base any construction of the words " perpetual succession " upon a supposed construction given of them by the legislature, inasmuch as their enactments have been somewhat conflicting and variant, and we therefore prefer adopting the natural and ordinary acceptation of the terms.

In 1864 Mrs. Hunt became a stockholder. Her liabilities were fixed by the law then in force, and could not be 2. ——— : double liability: construction of general corporation affected or changed by any subsequent enactments, either of the convention of 1865 or laws of 1845 and 1855. the legislature which passed laws in accordance with the provisions of the constitution then adopted. The question then is, what law was in force in 1864 which imposed on her a double liability? By the thirteenth sec-

tion of the act of 1845 a double liability was imposed on all stockholders of corporations created after the passage of that act. In 1855 that act was revised, and the twentieth section of the act concerning laws declares that, " all acts or parts of acts of a public, permanent and general nature, revised at the present session of the general assembly, so soon as such acts take effect, shall be construed as repealing the acts in force at the commencement of the present session of the general assembly, so revised." The thirteenth section of the act concerning corporations so revised in 1855 says : "In all corporations hereafter created by the legislature, unless otherwise specified in their charter," &c., a double liability is imposed. This section is a mere copy *in hæc verba* of the thirteenth section of the act of 1845. If the thirteenth section of the act of 1845 was repealed, as it undoubtedly was, by the twentieth section of the revision of 1855, the only law in force when Mrs. Hunt subscribed was the thirteenth section of the act of 1855, which declared a double liability upon the stockholders of all corporations hereafter created. Now this corporation was created in 1853, before the passage of the act of 1855, and unless we can construe the word " hereafter " as meaning heretofore, or as meaning both hereafter and heretofore, there was no double liability imposed on the stockholders in the Masonic Hall Association in 1864. Moreover the eighth section of this act of 1855 (Revised Code of 1855, p. 1,024) provides that " wherever the term heretofore occurs in any statute, it shall be construed to mean any time previous to the day when such statute shall take effect, and wherever the term hereafter occurs, it shall be construed to mean the time after the statute containing such term shall take effect." That this literal copy of the thirteenth section of the act of 1845 was a blunder on the part of the legislature may be conceded, but what authority is there on the part of the courts to correct it and insert the word "heretofore" instead of hereafter?

In *The City of St. Louis v. Alexander*, 23 Mo. 507, this

court remarks: "The effect of the revision of the charter on the 3rd day of March, 1851, was not to make former provisions which had previously existed, and which were continued, to begin from that date, but for convenience sake to embody all the acts in force at the time of the revision, to take date from the period they were first passed. It would be of the most mischievous consequences to hold that the revision of a law had the effect of making the revised law entirely original, to be construed as though none of its provisions had effect but from the date of the revised law. When a former provision is included in a revised law, it is only thereby intended to continue its existence, not to make it operate as an original act to take effect from the date of the revised law. The revision has not the effect of breaking the continuity of these provisions, which were in force before it was made." In that case the repealing clause in the act of 1853 was that "all acts and parts of acts contrary to and inconsistent with the provisions of this act or within the purview thereof," are hereby repealed; and we entirely concur in the views above expressed in that case.

But in the revision of 1855 it is declared that all acts or parts of acts revised at the present session of the general assembly, so soon as the revised laws take effect, shall be construed as repealing the acts in force at the commencement of the present general assembly, (whether consistent or inconsistent, contrary to or within the purview thereof). In short, but one meaning can be given to this law, and that is that the new law was a substitute for the old one, and the former law was expressly repealed. In the revision of 1865 this provision was materially changed. Section five says: "The provisions of the general statutes, so far as they are the same as those of existing laws, shall be construed as a continuation of such laws, and not as new enactments." There was no such provision in the revision of 1855, but an express repeal of the act of 1845, which was revised and a new law passed copying most of

the provisions of the former act. Section thirteen, which created the double liability in 1845, was repealed, and a new section adopted, copying literally from the old one, but unless we can conjecture that it was intended to apply to previous charters, and substitute the word heretofore for hereafter, this clause in the act of 1853 did not apply to the charter of the Masonic Hall Association. It is not our province to form any conjecture concerning the intention of the legislature, except from what they have said, and they have confined the liabilities expressly to charters created after the passage of the act of 1855. So that in 1864 there was no double liability upon Mrs. Hunt as a stockholder.

That neither the constitution of 1865 nor the act of the legislature passed under it could retroact so as to affect

3. ——: double liability under constitution of 1865.

Mrs. Hunt's liability in 1864, is beyond question. *State, &c. v. Sullivan Co. Ct.*, 51 Mo. 522. The judgment of the court of appeals is affirmed.

NORTON, J., DISSENTING.—I do not concur in the conclusion reached in this case. The thirteenth section of the act concerning corporations in the Revised Statutes of 1855, is a literal copy of the thirteenth section of the act concerning corporations in the Revised Statutes of 1845, and for that reason should not be construed as an original law taking effect only from the revision, but should be construed simply as a continuation of the law revised. *City of St. Louis v. Foster*, 52 Mo. 513.