THE STATE *ex rel.* CLOVER, *Circuit Attorney, Appellant,* v. THE LADIES OF THE SACRED HEART.

| 99 | 533 |
| 141 | 33 |
| 99 | 533 |
| 175 | 59 |

1. **Corporations, Charitable**: DURATION OF UNDER REVISED STATUTES OF 1845. The first section of the general corporation law of the Revised Statutes of 1845 (R. S. 1845, p. 231), which limits the duration of a corporation to a period of twenty years, unless otherwise provided in its charter, has no application to a corporation purely charitable.

2. ———: ———. Nor was the above changed by the provisions of the revision of 1855 (R. S. 1855, pp. 369, 370).

*Appeal from St. Louis City Circuit Court.*—HON. L. B. VALLIANT, Judge.

AFFIRMED.

*A. J. P. Garesché* for appellant.

(1) Evidence for defense irrelevant and illegal: Because not pertinent to the issue framed by the pleadings. Relating only to the trust and by the ruling of the court, denied to plaintiff unless the court should declare the charter expired. (2) No term declared in the charter, its duration was limited to twenty years.

Code of 1845, p. 122, Corporations, sec. 1, par. 1. In interpretation of a charter, the provisions of a general law are to be regarded as if embodied in the charter itself. *Renshaw v. Railroad*, 18 Mo. 215; *Railroad v. Ga.*, 98 U. S. 365; *Revere v. Boston Copper Co.*, 15 Pick. 361. Hence the charter is to be interpreted as if the third section were in these words: "Sec. 3. This corporation shall last for twenty years, and nothing in this act contained shall be so construed as to prevent the legislature from altering, amending or repealing the same at any time thereafter." (3) In interpretation of charters every presumption is in favor of the state. No power not expressly granted is to be inferred by construction. "Doubt is fatal." "By construction" at once declares that it has not been conceded. See further the quotations from the reports on this subject. The only exception to this rule is that for every power granted every power necessary for its fulfillment is included. *St. L. v. Railroad*, 13 Mo. App. 530; *Fertilizing Co. v. Hyde Park*, 97 U. S. 666; Waite on Insolv. Corp., sec. 94; 1 Morawetz on Corp., secs. 316–17. No extension is presumed, even by a fresh grant of franchises. *Illinois v. Tpke Co.*, 96 U. S. 68. (4) The point of respondent, that the restriction of the code of 1845 to twenty years, is, by section 20, code of 1855, volume 2, page 1026 repealed, is futile; because this charter is expressly excepted from this repeal, by section 13 of same act, in these words: "All acts, or part of acts, of a private, local or temporary nature, in force at the commencement of the present session of the general assembly, not repealed by, or repugnant to, some act of the present session, shall continue in force, or expire according to their respective provisions and limitations." 2 Code of 1855, p. 1025, sec. 13. And even without this section, a revision as in section 20 cited, purports to repeal; but in effect so far as it is the repetition of the former law it is only a re-enactment, not repeal. *St.*

*Louis v. Foster,* 52 Mo. 516; *Cape Girardeau v. Riley,* 52 Mo. 428; *St. Louis v. Alexander,* 23 Mo. 509; *State ex rel. v. Heidorn,* 74 Mo. 410. But if a repeal, a private act would not be affected by it, unless expressly named. *State ex rel. v. Cem. Ass'n,* 11 Mo. App. 572; *State ex rel. v. Flala,* 47 Mo. 319. A case parallel to the present was decided in favor of the state, and a copious abstract from it will be found in the argument. *Krutz v. Town Co.,* 20 Kan. 399.

*Hitchcock, Madill & Finkelnburg* and *Peter Taaffe* for respondent.

(1) This proceeding is not authorized by the Revised Statutes (vol. 1, chap. 60), and is not, therefore, governed by its provisions. And no exceptions are presented by the record which authorize a reversal of the judgment of the circuit court. (2) Defendant is an eleemosynary corporation. Its prescribed work is a charity. *Dartmouth College Case,* 4 Wheaton, 181; *St. Charles College Case,* 44 Mo. 570; 4 Conn. 172; *Girard College Case,* 2 Howard, 191–192; *Chambers v. St. Louis,* 29 Mo. 586; *University v. Rowse,* 8 Wallace (75 U. S.) 439; Pomeroy's Equity Juris., secs. 1020–1024; Statute of Elizabeth ( 1601 ). (3) A charity is, in its essential character and qualities, and in the estimation of the law, a perpetuity. Gray on Rule against Perpetuities, sec. 590, p. 361; 1 American Law Register (November, 1881, to 1882), p. 140; Argument of Olmstead, 45 Pa. 18. A charity is a favorite of the law. The statute of Elizabeth ( 1601 ) is in force in this state. *Chambers v. The City of St. Louis,* 29 Mo. 586. Education, with, as well as without, charitable aspects, has always been encouraged, and its promotion assigned a prominent place in the organic law of the state. " Schools and the means of education shall forever be encouraged in this state." Sec. 1, art. 6 of the Constitution of 1820, in force in December, 1847; sec. 1, art. 9 of

the Constitution of 1865; sec. 1, art. 11 of the Constitution of 1875. (4) Perpetual succession is one of the incidents annexed by the law to all corporations aggregate. A grant of a charter to A, B and C, and their successors, is of indefinite duration. The common law makes it such. And, unless specially restrained, such is its effect. 2 Morawetz on Corporations, secs. 1003 and 411. The act incorporating defendant dealt with an orphan asylum and a seminary of learning, both legal charities, and, therefore, in legal estimation, perpetuities. (5) The charter of respondent, by its terms, is of unlimited duration. Laws of 1846-7, p. 202. (6) The first section of the general corporation statute of 1845 has no application to the charter of respondent. R. S. 1845, p. 122. (7) Even if the first section of the general act of 1845 could be held applicable to respondent's charter, yet that section was repealed by the twentieth section of the act found at page 1026, volume 2, Revised Statues, 1855. *Fairchild v. Ass'n,* 71 Mo. 531, *et seq.; Coffin v. Rich,* 45 Maine, 512-13; 1 Redfield on Railroads [6 Ed.] p. 199; *Railroad v. Renshaw,* 18 Mo. 210; *Bailey v. Hollister,* 26 N. Y. 112; *Greenwood v. Freight Co.,* 105 U. S. 13; *Tomlinson v. Jessup,* 82 U. S. 454; *Sugar Tree Grove Academy,* 52 Mo. 322; *McRoberts v. Washburn,* 10 Minn. 23.

BLACK, J.—This is a proceeding upon *quo warranto* in the name of the state at the relation of the circuit attorney of the eighth judicial circuit against "The Ladies of the Sacred Heart," a corporation created and duly organized under the special act of the legislature of the seventh of December, 1846.

The record discloses these facts :

On the twelfth of March, 1827, John Mullanphy conveyed about twenty-four arpents of land to Philipine Duchesne, Octavie Berthold and Lucilla Matheron, who were nuns of the Order of the Sacred Heart, to

have and to hold for nine hundred and ninety-nine years upon trust "for the sole use of said nuns and their successors, being nuns of the same order, for the establishment and maintenance of the charity herein specified, which trust shall remain so long as the said charity shall be kept up and dispensed according to the true intent and meaning hereof, that is to say : Said nuns shall occupy said premises as a convent, and shall therein board, lodge, clothe, provide for and educate all such indigent female children who are orphans, or whose parents are both indigent and helpless, not exceeding the number of twenty at any one time, as shall be designated by said Mullanphy during his life, or, in case of his death, by his three eldest female lineal descendants " or, in case of no designated lineal descendants, "then by the Roman Catholic bishop of the diocese wherein the city of St. Louis is or shall be situate."

At the date of this deed the premises were, for the most part, outside of the limits of the city of St. Louis, and were covered with brush and timber, save less than one acre, upon which there was a small house. These trustees, their associates and the respondent corporation have maintained on the premises a convent, an orphanage, a boarding school, and a free day-school. The boarding school was discontinued on these premises in 1872, but continued on what is called the Withnel property, acquired by respondent. By reason of the increased value of the property, the income exceeds the cost of supporting twenty orphans.

By mesne conveyances the title to the Mullanphy property was vested in Madam Galloway, and she conveyed it to respondent on the twelfth of December, 1871, some twenty-five years after the date of the charter; but the title in the meantime had been in persons who were members of the order and also of the respondent, and was held in trust for respondent. The persons named in the special act as incorporators were members

of the order.   This Order of the Sacred Heart, as distinguished from the respondent, has many institutions throughout the country, and one of its objects has been and is the education of young ladies as boarders, and in exceptional cases, like the one in hand, it supports an orphan asylum.

The petition for the writ asks the court to adjudge the respondent guilty of unlawfully using corporate franchises; and to that end it is alleged that its charter expired in twenty years after the grant thereof, all of which is denied.   Further allegations are made to the effect that the respondent has and does appropriate portions of the revenues of the trust property to purposes not contemplated by the trust, namely, the support of a seminary of learning for young ladies other than orphans.   The court declined to go into a hearing of the issues on this branch of the case, until the question as to the expiration of the charter was determined, and on that issue found for respondent.   As the case stands before us, the only question is whether the charter granted on the seventh of December, 1846, expired in twenty years.

The charter is as follows :

"Section 1.   That Eleanor J. M. Gray, Mary Prudom, Josephine Jacquet, and their successors, shall be, and are hereby constituted a body corporate, in fact and in name, by the name and style of the "Ladies of the Sacred Heart," for the purpose of conducting a seminary of learning and an orphan asylum in the city of St. Louis, and by that name and style shall have succession, and be in law capable of suing and being sued, defending and being defended, in all courts and places, and in all manner of actions, and cases whatsoever, and may have a common seal and change it at pleasure; and by that name and style be capable in law of purchasing, holding and enjoying, to them and their successors, for the purposes above mentioned, any real estate in fee

simple, or otherwise, and any goods, chattels and personal estate, and of selling and otherwise disposing of the said real estate, or any part thereof, at their will and pleasure, but the operations of said corporation shall be confined to the promotion of the objects above mentioned.

"Section 2. Said corporation shall have power to make such constitution, by-laws, ordinances, rules and regulations for the government of the same, as they deem proper; *provided*, the same are not repugnant to, or inconsistent with, the laws and constitution of this state, or of the United States.

"Section 3. That nothing in this act contained shall be so construed as to prevent the legislature from altering, amending or repealing the same, at any time hereafter."

The first paragraph of the first section of the general statutes of 1845, concerning corporations, provides: "Every corporation, as such, has power, first, to have succession by its corporate name for the period limited in its charter, and, when no period is limited, for twenty years." R. S. 1845, p. 231. The question is whether this general statute fixes the period of existence of the respondent to twenty years, no time being in terms stated in the charter.

In considering this question some general rules must be kept in view. Where special privileges in derogation of common right, or exemptions from the general law governing other persons, are claimed by a corporation, its charter must be construed strictly in respect of such alleged grants. Nothing is to be presumed in favor of the grant of such privileges. But no such question is involved in the present case, and the rule has no application here. This charter is to be construed like any other written instrument. We must look for the intention of the parties. 1 Morawetz on Private Cor. [2 Ed.] secs. 316, 323. A corporation whose

charter does not limit its existence to a definite period of time continues, in legal contemplation, until it has been dissolved by some prescribed method. *Ib.*, sec. 411. Aside from the first paragraph of section 1, of the general law of 1845, this corporation would have succession without limitation as to time.

Again, it is conceded on both sides that the respondent is a charitable institution, and nothing more. It is, therefore, in many respects, unlike an ordinary business corporation having shareholders. Most of the provisions of the general law can have no application whatever to charters like the one now in question. The first section says, "every corporation, as such, has power," among other things, to make laws "for the transfer of its stock." The next section says: "The powers enumerated in the preceding section shall vest in every corporation that shall hereafter be created, although they may not be specified in its charter," etc. This provision in relation to stock has no application to this corporation; for it has and, under its charter, can have no shareholders. The same is true in respect of many other of the subsequent sections. It is, therefore, clear that though the general statute does say that every corporation shall have the designated powers, we must look to the objects and purposes of the particular corporation to see whether it does or can possess all of them. We see no reason why we may not also look to the objects and purposes of the corporation to see whether the limitation of twenty years fairly applies to it.

Now, it can hardly be believed that the legislature, in creating this corporation for the purposes, in part, at least, of rearing and educating orphans, designed to limit it to twenty years. Such an institution with such a limitation would end about as soon as fairly established. If this charter contained the words "perpetual succession," instead of simply the word "succession," then there would be no limitation as to time, notwithstanding

the general law.    It was so held in the case of a busi-
ness corporation having a capital stock.    *Fairchild
v. Masonic Hall Association*, 71 Mo. 526.    The pur-
poses of this corporation considered, it is believed we
should reach the same result.    If the charter on its face
disclosed a purpose to administer the Mullanphy trust,
there could be no occasion for doubt, for the trust is
practically perpetual.

The charter, however, is specific in the grant of
powers, so that in these respects there is no need of
reference to the general law ; the legislature has, by the
third section, reserved the right to amend or repeal it
"at any time hereafter."    The charter bears evidence on
its face of a determination on the part of the legislature
to make it perfect and complete in and of itself and
without reference to the general law.    In view of these
considerations, and of the objects and purposes for
which the corporation was created, we conclude the
legislature intended to, and did, give to it perpetual
succession.    This construction carries out what seems to
have been the purpose of the legislature ; and it is
enough to overcome the limitation in the general law,
that it appears from the special charter, taken as a
whole and read like any other written instrument, that
the legislature designed to give it unlimited succession.
Indeed it is a matter of some doubt whether the twenty-
year limitation in the law of 1845 applies to any purely
charitable incorporated association.

Though what has been said disposes of this appeal,
another point pressed by respondent will be noticed.
Section 20 of 2 Revised Statutes of 1855, page 1026, pro-
vides :    "All acts of a public, general and permanent
nature, revised at the present session of the general
assembly, so soon as such acts shall take effect, shall be
taken and construed as repealing the acts in force at the
commencement of the present session of the general
assembly, so revised."    According to the ruling in *Fair-
child v. Masonic Hall Association*, 71 Mo. 526, this

section repealed out and out the general corporation law of 1845, and the general corporation law of 1855 took effect only from the time when that revision went into operation. Concede that the first section of the corporation law of 1845 (the one which contains the twenty-year limitation) was repealed by the revision of 1855 ; and concede further that, because of the peculiar language of the repealing section, the re-enacted statute cannot be construed as a continuing law; still the statute of 1855 says, "every corporation, as such, has power," etc., following the exact language of the first section of the law of 1845. This language applies to corporations created previous to the revision of 1855, and leaves the respondent where it was before the repeal.

The second section of the law of 1855, like that of 1845, says: "The powers enumerated in the preceding section shall vest in every corporation that shall *hereafter* be created," etc.; but this does not destroy the force of the first section. The specified powers are made to apply to corporations, then, before and thereafter created. In the *Fairchild case* the court had under consideration the thirteenth section of the general corporation law of 1845 and 1855, and that section only professes to act upon corporations thereafter created. There was no section making the same provisions apply to existing corporations.

For the reasons before stated, the judgment is affirmed. RAY, C. J., absent; SHERWOOD, J., not sitting ; the other judges concur.