THE STATE ex rel. HINES, Prosecuting Attorney, v. CAPE GIRARDEAU AND JACKSON GRAVEL ROAD COMPANY, Appellant.

**In Banc, November 27, 1907.**

1. **CORPORATION: Period of Existence: Not Fixed in Charter: Special and General Acts.** Where no period or limitation of the duration of the charter of a toll road company was fixed in the special act of 1851 creating it, that period was determined by the general corporation laws then in force which limited it to twenty years, and not by the general act for the incorporation of turnpike companies enacted the same year, which had reference only to companies organized under its provisions.

2. **———: Toll Road Company: Fee Simple Title to Roadbed.** Notwithstanding the special charter creating a toll road company says it may acquire land for its road by purchase or condemnation and such act "shall vest in said company a fee simple title to said strip of land," it by either method acquired only an easement therein. The words "fee simple title" were not used in their technical sense. Power to take and hold lands in fee simple for a right of way, whether by purchase or condemnation, means no more than the right to acquire and hold an easement in the land so long as it is needed for the purpose of a right of way.

3. **———: ———: ———: Lands for Materials and Timber.** And that such was the understanding of the Legislature which

granted the special charter is emphasized by the fact that another section of the act authorized it to acquire in fee simple pieces or parcels of land along the line of its road for the purpose of procuring timber and other material, and authorized it to sell them, whereas it said nothing about its right to sell its right of way.

4. ———: —+——: ———: **Sale: After Charter Expired.** A toll road company cannot transmit the fee simple title or any title or interest in the land used as a roadbed after it ceases to be a corporation or its charter has expired, for it has no interest to convey, although it had acquired said land by purchase.

5. ———: **Limitation: Public Road.** A toll road corporation cannot acquire a perpetual easement in a public road by limitation by collecting tolls from persons traveling thereon. The public held the possession and exercised the right to travel subject only to the payment of tolls to the company. Such use by the company is not exclusive A submission by travelers for ten years or longer, to the illegal exaction of tolls by the company, after its charter had expired, was not a deprivation of the public of its right to the public highway.

6. ———: **Laches** of the county authorities to enjoin a toll road company from exacting tolls for travel over its road, after its charter had expired, does not divest the public of its right to use and travel over the road as a free public highway, nor defeat a suit brought by the county attorney, long after its charter expired, to enjoin the collection of tolls by it.

7. ———: **Stock Owned by County.** Nor is the State at the relation of the prosecuting attorney estopped to maintain such suit by the fact that the county owned a part of the stock of the toll road company and sold it long after its charter expired, which was acquired by said company's transferee, the defendant.

8. ———: **Expiration: Title to Road.** Upon the expiration of the corporate existence of a toll road company, according to the limitation fixed by its charter or the general laws, the road and franchises vest in the public free from any claim of said company, and any attempted conveyance thereof by it thereafter is void, for it neither had any legal existence, nor any road or interest therein to convey, although it may have originally constructed the road and acquired the land occupied by it by purchase.

Appeal from St. Francois Circuit Court.—*Hon. Robert A. Anthony,* Judge.

AFFIRMED.

*W. H. Miller* and *Oliver & Oliver* for appellant.

(1)   The act gives the corporation power to hold the land in "fee simple." A fee simple is defined to be the largest estate and most extensive interest that can be enjoyed in land, being the entire property therein.   2 Blackstone's Commentaries, 106.   The statute provides that "words and phrases shall be taken in the plain or ordinary and usual sense," "but technical words, having a peculiar and appropriate meaning in law, shall be understood according to their technical import."   Sec. 4160, R. S. 1899; 122 Mo. 400. Kellogg v. Malin, 50 Mo. 496, is at variance with the whole purpose and intent of the act under which the plank road company was incorporated.   The word "fee" must have been designedly used by the lawmaking branch of the government.   There was then no constitutional inhibition against the acquiring of a "fee by condemnation," as we have in our present Constitution. And in our present Constitution, the inhibition is leveled against the taking of land for "railroad tracks" without the consent of the owner. Art. 2, sec. 21, Constitution; Lewis on Em. Dom., sec. 277; Depot Co. v. Frederick, 117 Mo. 153; State v. Board of Trustees, 175 Mo. 59.   The legislative grant is a contract and conferred vested rights.   St. Vincent's College v. Schaefer, 104 Mo. 261.   (2)   That part of the road between Jackson and Bufordsville appellant claims by the Statute of Limitation.   Boyce v. Railroad, 168 Mo. 583; Turner v. Railroad, 112 Mo. 542; Horgis v. Railroad, 100 Mo. 217.   (3)   In the court below respondent made the point that appellant had the right to construct a macadamized road, but not to buy one.   This we denied then, and deny now.   37 Mo. App. 496; Morawetz on Corporations, 372; Thompson on Corp., sec. 5944; Branch v. Jesup, 106 U. S. 468.   (4)

This record shows that Cape Girardeau county, by and through its county court, parted with its interest as a stockholder in the old plank road company in 1882, and that it took the money from its vendors and put the same in the common treasury in the county. This court will take judicial notice of the fact that since 1882 it has been subject to the payment of taxes and will presume it has performed its duty in that behalf, and paid taxes both to the State and county, on all its taxable property. It has permitted this appellant to believe from its conduct and treatment that it did not own or assert any right, title, claim or interest in and to said strip of land constituting appellant's roadbed. (Since this cause has been appealed, the county has given its assent to the use of all of said road to appellant), and is in equity estopped. Dunklin County v. Chouteau, 120 Mo. (5) Appellant holds this property under a solemn contract with the State made with its grantor, the Cape Girardeau Macadamized and Plank Road Company, and respondent can no more destroy appellant's rights in this strip of property than it can destroy the rights of any other citizen in any kind of property. Dartmouth College Case, 4 Wheat. 518.

*T. D. Hines, Robert L. Wilson* and *M. A. Dempsey* for respondent.

(1) A charter will in general be construed so as to conform to the general law. McRotee v. Orphan, 59 Cow. 437; Abbott's Digest Corporations, 151, 152. (2) The charter of the Cape Girardeau Macadamized Plank Road Company specified no period for its existence, and its corporate life, therefore, expired February 28, 1871, twenty years after the charter was

granted. Laws 1851, p. 132; R. S. 1845, p. 231; Laws 1851, p. 259. (3) The general turnpike act (which should apply only to corporations formed under it, and not corporations created by special charter) required that the articles should set forth the term of years to which the existence of the association shall be limited, which shall not exceed thirty. No term of years being set forth, the general corporation limitation of twenty years should prevail. Laws 1851, p. 259; R. S. 1845, p. 231. (4) The roadbed in question was a public highway, established by public authority, for public use, and is to be regarded as a public easement and not as private property. The right to travel over the road was an easement vested in the public, and when the charter expired this easement continued, disburdened of tolls, but otherwise unaffected. State ex rel. v. Hannibal & Ralls Co. G. R. Co., 138 Mo. 332; Campbell on Highways, No. 8, p. 8; No. 14, p. 11; Benedict v. Gait, 3 Barb. 469; Davis v. Mayor of New York, 14 N. Y. 516; St. Clair Co. Turnpike Co. v. Illinois, 96 U. S. 63; 27 Am. and Eng. Ency. Law, 320; Pittsburgh, etc., v. Com., 104 Pa. St. 583; State v. Lake, 8 Nev. 276; State v. Curry, 6 Nev. 75; State v. Dayton, 10 Nev. 115; Wood v. Truke Co., 24 Cal. 474; Craig v. People, 47 Ill. 487; Police v. Jury, 44 La. Ann. 137; Hayward v. Mayor, 8 Barb. 492; Hooker v. Utica, 12 Wend. 371; State v. Passiac, 42 N. J. L. 524; State v. Mayor, 29 N. J. L. 441; Jersey City v. State, 30 N. J. L. 521; State v. Atlantic City, 34 N. J. L. 99; State v. Leith, 83 Cal. 239; Dawes v. Hawkins, 8 C. B. N. S. 857; State v. Western, etc., 95 N. Car. 602; Kansas v. Lawrence, 22 Kan. 438; Blood v. Woods, 95 Cal. 78; People v. Davidson, 21 Pac. 538; State v. Maine, 27 Conn. 641; Central Bridge v. Lowell, 15 Gray 106; People v. Newburg, 86 N. Y. 302; Heath v. Barrymore, 50 N. Y. 302. (5) The claim of fee simple to the roadbed as a defense is untenable because: (a)

The company had no power to acquire fee simple title by deed. Kellogg v. Malin, 50 Mo. 496. (b) The deed offered in evidence does not purport to be a conveyance in fee simple, but to be a grant of a strip of land to be used as a roadway forever. In other words, it amounts to the dedication of the land as a public highway. (c) A large portion of the roadbed had been used as a county road prior to the organization of the company and was burdened with a public easement which the owners of adjacent land could not convey. (d) Even if the present company acquired and possesses the fee simple title to the land over which the roadbed passes, such title is subject to an easement in the public—an easement which is indefeasible and perpetual. "Once a highway always a highway." A turnpike is regarded as a public easement and not as private property. Every traveler has the same right to use it, paying the toll established by law, as he would to use any other highway. Ralls Co. case, 138 Mo. 332. (6) The law of estoppel can not be invoked against a county. Hudeberg v. St. Francois Co., 100 Mo. 69; Sturgeon v. Hampton, 88 Mo. 203. (7) Possession cannot be adverse so long as it is held under a lease or license. It cannot be adverse if held in subordination to the true title. Handlan v. McManus, 100 Mo. 124. (8) If the possession in its conception is friendly, then it cannot be converted into one of hostility by mere mental intention. Some notice or act indicating an intent to disseize is necessary. Comstock v. Eastwood, 108 Mo. 41; Meier v. Meier, 105 Mo. 411; Budd v. Collins, 69 Mo. 129; Wilson v. Lerche, 90 Mo. 473; Pitsman v. Boyce, 111 Mo. 387. (9) The possession of the company has at no time been exclusive. The public has occupied and used the road as a highway continually.

## IN DIVISION TWO.

GANTT, J.—This is an appeal from the judgment and decree of the St. Francois Circuit Court perpetually enjoining and restraining the defendant, its officers, agents, servants, successors and assigns from further maintaining toll gates on a certain road or highway, designated as a free public highway beginning at the city of Cape Girardeau, running thence to Jackson, the county seat of Cape Girardeau county, and from thence to the town of Burfordville, formerly known as Bollinger's Mill.

The petition alleges that said road is now and for more than fifty years has been a public highway and is the main thoroughfare between the city of Cape Girardeau and the towns of Jackson and Burfordville; that the defendant is a corporation organized under the laws of this State and that without authority it maintains on said highway, at various points, certain bars and obstructions commonly known as toll gates, and that it prohibits and prevents the public from making fair and proper use of said highway; that the existence and maintenance of such toll gates obstruct free travel over said road and constitute a continuous public nuisance and prays that the nuisance be abated and the defendant, its officers, agents, servants, successors and assigns be perpetually enjoined from in any way further obstructing said highway and from preventing free travel thereover and for such other and further relief as the court may deem meet.

The defendant in its answer admits that it is a corporation organized under the laws of this State and as such is the owner in fee of all that fifty-foot strip of ground upon which it has constructed its macadamized and gravel road in the county of Cape Girardeau and State of Missouri, beginning at the intersection of Pacific street and Broadway formerly named Harmony

street and called Jackson street, thence in a general
northwesterly direction to and through the city of Jack-
son, the county seat of Cape Girardeau county, and
thence in a westerly direction to the town of Bur-
fordville formerly known as Bollinger's Mill. Fur-
ther answering defendant says that under the law of
its incorporation it was authorized to and in 1882 it
did acquire in fee simple all that strip of land fifty
feet wide upon which it has constructed and now has
its gravel roadbed over the route above described and
that it has been in the sole and exclusive possession
of the said strip of land ever since then, claiming, us-
ing and enjoying all the rights of ownership over the
same. That its deed for and to said strip of land was
placed of record in 1882 and is now and has been at all
times since then of record. Defendant further states
that it acquired said strip of land from the Cape Gir-
ardeau Macadamized and Plank Road Company and
that said last-named company was a corporation cre-
ated by an act of the General Assembly of the State of
Missouri, approved February 28, 1851, entitled, "An
Act to incorporate the Cape Girardeau Macadamized
and Plank Road Company." That the said Cape Gir-
ardeau Macadamized and Plank Road Company had
the right under its charter to acquire by deed,
gift, purchase, appropriation, or condemnation, a
strip of land not exceeding one hundred feet
in width, in fee simple, for the purpose of
building a roadbed thereon, and that its char-
ter was not subject to legislative "alteration, suspen-
sion or repeal," but was to and did have "continued
succession" with the other usual rights of bodies pol-
itic and corporate, "including the right to sell any part
or all of its real estate so acquired." That said Cape
Girardeau Macadamized and Plank Road Company
acquired the said strip of land fifty feet wide, for a
valuable consideration, by warranty deed, and placed

the same of record in 1855, and that no part of said strip of land since 1855 has belonged to the public, or to the State of Missouri, or to the County of Cape Girardeau, but that it has at all times since then remained in the open, notorious and exclusive possession and ownership of this respondent and its grantor. That the stockholders of its grantor had expended more than $75,000 in grading, macadamizing, graveling and bridging said road, and that since the acquirement of said strip of land in 1882 it has expended more than $66,000 in the reconstruction of said road on said strip of land so as to make same conform to the law of this State. And, further answering, respondent denies each and every averment in relator's petition set out, except the admission of its corporate existence, as hereinabove pleaded, and, having fully answered, prays for judgment and costs.

And, for a further answer, respondent says that the relator in this proceeding is seeking to take and deprive it of its property and of its rights to hold, own and enjoy property without due compensation and in its efforts to do so the relator violated sections 4, 15, 21, 30 and 32 of article 2 of the Constitution of Missouri, and section 10, of article 1, section 4 of article 4, of the 14th Amendment of the Constitution of the United States, which prohibits the taking of private property without compensation therefor. And respondent now says that its stockholders have never been repaid for the money they paid to acquire and buy said strip of land, and for the building of its toll houses and bridges along and over said road, and that in buying said strip of land, toll houses, bridges and roadbed this respondent and its grantor were following the universal custom and the settled policy of corporate law in this State in that the last board of directors of an outgoing corporation shall act as trustees for making sale of lands and other tangible property

and assets belonging to it, and the respondent avers that under the law of this State, and under the custom and settled policy relating to the closing up of corporations in this State, it bought, in good faith, this property and has for more than twenty years been in the possession of the same, expending annually many thousands of dollars in the improvement and betterment of said property. That the county of Cape Girardeau was a stockholder in the Cape Girardeau Macadamized Plank Road Company, and that it sold its stock to private individuals in 1882, at or about the time that this respondent bought the strip of land or roadbed, and so this respondent says that the county of Cape Girardeau and all of its citizens have seen and insisted upon this respondent making these yearly expenditures upon its road, although said county has no interest in and to said road, and has not had any interest in and to any part of said road since 1882, when it sold out to the parties now holding the stock of this respondent. Wherefore, having fully answered, it again prays to be discharged.

To which answer plaintiff filed the following reply:

"Comes now the relator herein and for amended replication to respondent's answer denies each and every allegation therein contained, except such as are hereinafter specifically admitted, and prays judgment as heretofore. And, further replying, relator denies that the respondent is or ever was the owner in fee of the fifty-foot strip of ground upon which it has constructed a gravel road between Cape Girardeau and Bollinger's Mill, running through the town of Jackson; denies that it ever constructed any road at any time, and avers that it had no authority to acquire a fee simple title to any road or highway whatever. And, further replying, relator denies that in 1882, or at any time, it acquired in fee simple that strip of land, fifty feet wide, extending from Pacific street, in

the city of Cape Girardeau, through the city of Jackson to Burfordville, and denies that it constructed a road thereon, and avers again that it had no authority to acquire any fee simple title to any roadway or roadbed whatever; and further denies that respondent is now and has been in the sole or exclusive possession of said strip ever since 1882, but avers that said strip of land is now and has been for more than fifty years a public highway used and traveled by the public, subject only, however, to the right of a former company to collect tolls thereon from the year 1851 to 1871.

"Relator further denies that respondent acquired from the Cape Girardeau Macadamized and Plank Road Company any strip of land whatever, and denies that said Cape Girardeau Macadamized and Plank Road Company had any authority to convey any road or highway which it may have owned to respondent, or to any one else; and further avers that at the time of the alleged conveyance the Cape Girardeau Macadamized and Plank Road Company, by lapse of time, had lost its right to take tolls upon said road, and had no right whatever to convey to the defendant, or any other person or corporation, the right to take tolls upon said highway, or the highway itself. And further, relator avers that said company during its corporate existence, had no authority or power to convey its road to any person; that it became defunct on February 28, 1871, and that the persons purported to make the conveyance of its property were not the persons pointed out by the law for so doing, and that said purported conveyance is wholly inoperative and void.

"Relator further avers that the Cape Girardeau Macadamized and Plank Road Company has no power or authority under its charter to acquire, by deed, gift, purchase, appropriation or condemnation, a strip of

land, not exceeding one hundred feet in width, in fee simple, for the purpose of building a road thereon, and, further, denies that it ever acquired, either by deed, gift, purchase, appropriation, or condemnation any lands in fee simple; but that the only rights which it ever acquired were rights of way for and during the period of its corporate existence, and for the purpose of building and maintaining a public road and taking tolls thereon during its corporate existence, and the further right to occupy the public or country roads within the county.

"And, further replying, relator says that in the year 1851, and long prior thereto, there had existed a public highway running between the town of Cape Girardeau, on the Mississippi river, in said county, to the town of Jackson, the county seat of said county, and thence on to the town of Burfordville, in said county, which road was the main traveled road between said points in said county, and maintained and kept up by and under the supervision of the county court of said county; that in the year of 1851 the State Legislature by an act entitled, 'An Act incorporating the Cape Girardeau Macadamized and Plank Road Company,' approved February 28, 1851, incorporated the Cape Girardeau Macadamized and Plank Road Company for the purpose of making an artificial road from the city of Cape Girardeau, in Cape Girardeau county, by way of the town of Jackson, in said county, and thence to a point on Whitewater, in said county, called Bollinger's Mill, and now known as Burfordville, thence to a point known as Mine LaMotte, or the vicinity thereof, in the county of Madison; and that thereafter, pursuant to said charter, the said Cape Girardeau Macadamized and Plank Road Company undertook to and did construct a road from Cape Girardeau through Jackson to Burfordville, in said county; that

in constructing said road, the said company took and appropriated for use as a road a large portion of the old country road between Cape Girardeau and Jackson and Burfordville, and that thereafter the portions of the old country road not so appropriated by the company were abandoned by order of the county court of said county, and that portions of the old road not appropriated thereafter reverted to the original owners, and ceased to be used in any way as a public highway; that said company constructed toll gates on said road, to-wit, one at and near the city of Cape Girardeau, two at and near the town of Jackson, and one at and near the town of Burfordville; that the road so constructed by the Cape Girardeau Macadamized and Plank Road Company has ever since been in existence and known and used as a public highway, and that said Cape Girardeau Macadamized and Plank Road Company, from and after the time of its construction and until the 28th of February, 1871, rightfully and under the terms of its charter, collected from the public using the road tolls for passage thereover. Relator further avers and says that from and after the time of the abandonment of the portion of the old road by the county court, the highway so constructed was the only public highway leading directly from Burfordville to Jackson and from the town of Jackson in Cape Girardeau county to the city of Cape Girardeau. Relator, further replying, says that the charter of said company and all its rights in and to said roadway and particularly to take tolls for the use thereof wholly ceased upon the 28th day of February, 1871, when, by operation of law, it ceased to exist. But relator says that notwithstanding the right of said company with relation to said road had then ceased, the former officers of said company and the stockholders thereof, undertook to and did thereafter for a long

207 Sup—7

space of time, without any right or authority, bar the public from the free use of said highway and compel the public to pay tolls for traveling thereover; and that thereafter, to-wit, on the — day of —, 1882, the persons wrongfully claiming to be stockholders and officers in the old company undertook to perpetuate the right to take tolls upon said highway and to prevent the public from at any time thereafter having the free use of said road, by obtaining articles of incorporation of the defendant, the Cape Girardeau and Jackson Gravel Road Company, and obtaining a purported deed for the rights, property and franchises from the old company to respondent, which has and had no authority to acquire any road, but only to build one; that said pretended stockholders and officers of the old company in the formation and organization of a new company created a paper company without assets and that not a dollar of money was paid by any of the stockholders of respondent company for any share of stock, but that the whole transaction was a scheme contrived with a view to defraud the public out of its public highway forever, and to perpetuate the franchise to take tolls which had long expired by operation of law. And, further replying, relator says that ever since such time the respondent company, by its officers and agents, has arrogated to itself the right to exclude from the use of said highway from Cape Girardeau to Jackson and Burfordville, the general public, except upon payment to it of a toll for the use of said road.

"The relator avers that upon the expiration of the charter of the old Cape Girardeau Macadamized and Plank Road Company, on February 28, 1871, all the rights in and to said roadway reverted to and became vested in the public as a matter of right. That the purported conveyance from the said company to the Cape Girardeau and Jackson Gravel Road Com-

pany was inoperative and void, and that the respondent company has now no right whatever to exact any toll from the public for the use of said road, and maintains the same toll gates and obstructions upon said road in violation of the law.

"And, further replying, relator says that this proceeding is not violative of the sections of the State and Federal constitutions as set forth by the respondent. And, further replying, relator says that the stockholders never paid a single dollar to the respondent company and have spent not a single dollar for the maintenance of said road, but on the contrary, all the money which has been expended for the maintenance of said road has been extracted by said company wrongfully and unlawfully from the traveling public, and in addition to the funds so spent upon repairs, said stockholders have received for their own personal use large dividends from their stock, extracted wrongfully and unlawfully from the traveling public; and denies that this respondent company bought the road aforesaid in good faith. Wherefore, the relator again prays judgment for a perpetual injunction as heretofore and for his costs in this behalf expended."

The following facts form a sufficient basis for the opinion and judgment of this court: On February 28, 1851, by a special act, the General Assembly of this State incorporated "The Cape Girardeau Macadamized and Plank Road Company" with a capital stock of $75,000, and by said name to have continued succession. [Laws of Missouri, 1851, page 132.] Under said charter the company was formed which constructed a toll or turnpike road from Cape Girardeau to Burfordville by way of Jackson. This corporation continued to operate said road as a toll road until 1882, when the defendant company was organized under article 4, chapter 21, Revised Statutes 1879, for the purpose of maintaining and owning a gravel road, and has

maintained and operated it to the present time. In the year 1851, the original company obtained from property-owners along its right of way from Cape Girardeau to Jackson, a deed to a strip of land fifty feet wide and constituting its right of way. This deed recites that, "Whereas it is the object and intention of the undersigned grantors to secure to said company for the purpose aforesaid a convenient and permanent right of way," and then "grant, bargain, sell and convey and confirm unto said company all their rights, title, claim and interest, . . . to have and to hold . . for the purpose aforesaid to the said road company forever," and then follows a special warranty title. No title was ever obtained to the right of way of that portion of said road extending from Jackson to Burfordville by deed, conveyance or condemnation proceedings. On December 23, 1882, certain persons purporting to be directors of the Cape Girardeau Macadamized and Plank Road Company undertook to convey, by deed to defendant, all its personal property and right of way from Cape Girardeau to Jackson, as well as certain parcels of land lying outside of the right of way. This deed does not convey right of way from Jackson to Burfordville. It was stipulated that the county of Cape Girardeau was a stockholder in the Cape Girardeau Macadamized and Plank Road Company and held 960 shares for which it paid $22,500. That in 1882, the county court sold this stock to L. H. Davis, W. F. Rodney and L. F. Klosterman for $1,720. Various orders of the county court appointing commissioners to vote the county's stock for officers of said company from 1872 down to and including June 5th, 1882, were read in evidence. The circuit court found from the evidence that there was a public road from Cape Girardeau to Jackson prior to the building of the turnpike or toll road and that a considerable portion of it was appropriated by the original toll road

company. The toll road followed the general route of the old county road and as a consequence the old road was abandoned. No showing was made to the effect that this old county road was ever established by proceedings and proper orders of record in the county court, but the evidence tended to prove that as a matter of fact it existed prior to the passage of the Act of February 28, 1851, incorporating "the Cape Girardeau Macadamized and Plank Road Company," but no public road seems to have been established over the route of the toll road from Jackson to Burfordville prior to the construction of the toll road. The county never has owned any stock in the defendant company.

I. This cause was argued and submitted with the cause of State ex rel. Hines v. Scott County Macadamized Road Company, *ante,* page 54, and many of the questions discussed and determined in that case are present in this, but there are some marked differences in the facts of the two cases. In the Scott County Gravel Road Case, the charter privileges were expressly limited to fifty years, whereas in this case, no limitation of the duration of the charter is fixed in the special act creating the company, and we must look to the general laws to ascertain what, if any, limitation was provided. The revision of 1845 was then in force and provided that "every corporation, as such, has power: first, to have succession by its corporate name for the period limited in its charter, and *when no period is limited, for twenty years."* [R. S. 1899, sec. 971.] This statute has been held to apply to all corporations except charitable and educational institutions and those in which the length of corporate existence is fixed in the charter itself. [State ex rel. v. Payne, 129 Mo. 468; State ex rel. v. Ladies of Sacred Heart, 99 Mo. 533; State ex rel. v. Lesueur, 141 Mo. 29.] We think the circuit court properly ruled that the charter

life of the Cape Girardeau Macadamized and Plank
Road Company was limited by the general corporation
laws in force at the time of its incorporation to a term
of twenty years, and not by the general act for the in-
corporation of turnpike companies approved February
27, 1851, which has reference only to companies under
its provisions, and not to special acts like those under
which said company was created.

But it is urged with much force and plausibility
that inasmuch as the act of February 28, 1851, incor-
porating the Cape Girardeau Macadamized and Plank
Road Company, by the 11th section thereof authorized
"said company to receive by deed, gift, purchase or
other conveyance a strip of real estate over which to
construct said road . . . for carrying into effect
the objects of this company; but if said strip of real
estate cannot be obtained by said company by gift, pur-
chase or otherwise . . ., or if the owners be infants,
married women, etc., . . . the fact shall be reported
to the judge of the circuit court . . . and said judge
shall appoint three disinterested persons (freeholders)
of said county, to view said lands required for said
company who shall, on oath, value the same, taking in-
to consideration the benefits which said road will be to
persons owning said lands, and assess the damages if
any and condemn said land for the use of the road, etc.
. . . The judgment of the court or judge in favor
of said company shall vest in said company *a fee simple
title* to the strip of land so condemned," the said com-
pany was invested with the power to acquire a fee sim-
ple interest in its right of way and did acquire such
interest, which passed to defendant by the deed of
December 23, 1882, free of any rights of the public in
and to the same as a free public highway. Counsel also
invoke sections 12 and 33 of said special act which pro-
vide that the said company may "own in fee simple
. . . pieces and parcels of land, along the line of said

road, for the purpose of procuring timber and other materials from the same, for the use of said road and for erecting toll houses thereon'' and ''may at any time sell any such tracts or parts thereof, and execute conveyances to the same in the manner prescribed by law;'' and exempts said company from the provisions of section 7 of the first article of the act of March 19, 1845, entitled ''An Act concerning corporations,'' which provided that ''the charter of every corporation that shall hereafter be granted by the Legislature shall be subject to alteration, suspension and repeal, in the discretion of the Legislature.''

In view of these provisions of the act, counsel for defendant insist that the legislative intent was to create a perpetual corporation and to grant it a fee simple in its right of way. As held in State ex rel. Hines v. Scott County Macadamized Road Co., 207 Mo. 54, the company did not obtain a fee simple title in its roadbed. This court, beginning with Kellogg v. Malin, 50 Mo. 496, has construed charters granting the power to take and hold lands in fee simple for a railroad right of way, to mean no more than the right to acquire an easement so long as it needed the land for the purpose for which it was taken. In that case, Judge WAGNER, speaking for the court, said: ''It is true that in speaking of the title which the company acquires, the Legislature here uses the term 'fee simple'; but did it contemplate a fee simple according to the technical legal meaning of the term? . . . In determining the consideration to be paid by these roads for the right of way, the benefits and advantages accruing to the owner are taken into calculation. The benefits and advantages, then, are considered as forming a part of the purchase-money. . . . The use is vested in the public, but the reversionary title still continues in the owner of the soil. In my opinion, notwithstanding the language used, nothing more than an easement passed

to the road," etc.    That doctrine was reannounced in Venable v. Railroad, 112 Mo. 103, and in Chouteau v. Railroad, 122 Mo. 1. c. 385; Boyce v. Railroad, 168 Mo. 589, et seq.   While counsel urge that Kellogg v. Malin, 50 Mo. 496, should no longer be followed, we are of opinion that a rule of law so long established and adhered to should be considered settled, especially where the matter has been so thoroughly reconsidered and sustained.   The argument then that the Cape Girardeau Macadamized and Plank Road Company acquired a fee simple which it could transmit after it had ceased to be a corporation cannot be accepted as sound.   We think it is clear that the road only obtained an easement over the right of way during its corporate life, which expired in 1871.   This conclusion is reinforced by the 12th section which permits the company to acquire in fee simple lands along its route which it is authorized to sell and convey, thus emphasizing the fact that it did not have the power to convey its right of way in fee simple.

II.   Another contention in this case not made in the Scott County Road Case is that as to that portion of the road between Jackson and Burfordville defendant has title by virtue of the Statute of Limitations. It is obvious at once that this is not a claim as against the owner of the soil, by adverse possession, but is an attempt to assert a right to an easement by adverse possession as against the public.

When it is recalled that the charter of the Cape Girardeau Macadamized and Plank Road Company created an easement in the public and that from the date of its construction in 1851, up to this time, the public has continuously availed itself of that easement subject only to the easement granted to said company to take specified tolls and that defendant is asserting that easement under the franchise of the original company and by purchase therefrom, it is clear, we think, that

neither the possession of the original company, defendant's grantor, nor defendant's possession, can be said to have been exclusive, but was held in common with the public; the public holding the possession and exercising the right to travel subject only to the payment of tolls to defendant's grantor and defendant. Notwithstanding it may be said that the easement in a highway may be acquired by adverse user for the same length of time that adverse user of the land would give title in the land as against the owner, it has never been ruled that the public for whose benefit the easement is maintained has lost its right by the payment of the tolls for the limitation period. Such a claim ignores a fundamental element of title by adverse possession, to-wit, that it must be exclusive. Two concurrent easements were acquired when the road was constructed under the charter, the easement of the public to use and travel over the road, subject only to the payment of tolls, an easement which it has continuously asserted from 1851 to the present time, and an easement in the Cape Girardeau Macadamized and Plank Road Company, during its corporate existence, rightfully to collect the tolls for such use of the road, and since its charter expired the public has continued to exercise its easement of a highway and submitted only to defendant's claim of tolls, but never to a deprivation of its right of highway.

But defendant further asserts that its rights have become fixed by the laches of the public and lapse of time and in support of this position relies upon Dunklin County v. Chouteau, 120 Mo. 577. In that case, this court held that the doctrine of laches applied to a county or other municipal corporation as well as to individuals. [Railroad v. Marion County, 36 Mo. 295; State ex rel. v. West, 68 Mo. 229; Boone County v. Railroad, 139 U. S. 684; 1 Dillon on Munic. Corp. (4 Ed.), sec. 548.] But it was also said: "Distinction must

also be made between property held for strictly public
purposes, as for streets, commons and the like, and
property held by a corporation in its private charac-
ter.    [2 Dill. on Mun. Corp., sec. 675.]    This distinc-
tion is made in our present Statute of Limitations,
Revised Statutes 1889, sec. 6772,'' now section 4270,
Revised Statutes 1899.    As pointed out by Judge An-
thony in the circuit court, ''If the defendant had gained
any rights, to the road in question, by limitation or
laches, they were not against the county or the prop-
erty of the county, but against the public, the effect of
which, if such rights have been acquired, is to deprive
the public of a free public highway.    The public first
became entitled to use this road as a free public high-
way immediately upon its construction and unless its
rights have been barred by laches or the Statute of
Limitations, it is still entitled to exercise such rights.
In Brown v. Carthage, 128 Mo. 10, and Williams v. St.
Louis, 120 Mo. 403, it is held that the Statute of Limita-
tions does not run against land dedicated to public use,
and in St. Louis v. Railroad, 114 Mo. 13.'' And we agree
with him that any laches of the county authorities did
not operate to divest the public of its right to use and
travel over this road as a free public highway disbur-
dened of all tolls and exactions after the charter of
the Cape Girardeau Macadamized and Plank Road
Company expired, nor is it estopped by the fact that
the county court in 1882 sold its stock in said road cor-
poration.

III.    As to the questions raised as to the remedy
by *quo warranto,* ''perpetual or continued succession,''
and the alleged violation of defendant's constitutional
rights, we have already expressed our views in the com-
panion case of State ex rel. Hines v. Scott County
Macadamized Road Co., 207 Mo. 54.    This proceeding
does not seek nor does the judgment of the circuit court
appropriate any of defendant's property, acquired un-

der section 12 of the Act of 1851; it simply enjoins the further maintenance of the unauthorized toll gates upon this public highway and the exaction of illegal tolls. In our judgment the said Cape Girardeau Macadamized and Plank Road Company became disburdened of tolls under the Act of 1851, on February 28, 1871, and that the alleged deed of December 23, 1882, conveyed no title to defendant, because there was no such corporation as the Cape Girardeau Macadamized and Plank Road Company in existence at that date under the laws of this State, and the road and franchises said deed purported to convey had long prior thereto become vested in the public free from any power of said defunct corporation to transfer the same. [State ex rel. v. Gravel Road Company, 138 Mo. l. c. 345.]

The judgment of the circuit court is affirmed.

*Fox, P. J.,* and *Burgess, J.,* concur.

## IN BANC.

PER CURIAM.—Upon a rehearing of this case before the Court in Banc, the foregoing opinion of *Gantt, C. J.,* in Division No. 2, is adopted, *Burgess, Valliant, Fox, Lamm, Graves* and *Woodson, JJ.,* concurring therein.