WILLIAM P. O'GRADY, Plaintiff, *v.* NEW YORK MUTUAL LIVE STOCK INSURANCE COMPANY of Buffalo, New York, Defendant.

*A co-operative live stock insurance company, organized under article 8 of the Insurance Law (Chap. 690 of 1892) — liability of, for the death of an animal by fire.*

A co-operative live stock insurance company, organized under article 8 of chapter 690 of the Laws of 1892, known as the Insurance Law, for the purpose of insuring the lives of animals, is liable for the death of an animal which results, not from the ordinary causes which produce death in domestic animals, but from a fire; and there is nothing in article 3 of the Insurance Law, relative to the formation of stock companies to insure all kinds of property against loss or damage by fire, nor in article 9, relative to town and county co-operative insurance companies, contemplating, among other things, insurance of live stock against loss or damage by fire, which conflicts with this view.

It is a canon of statutory interpretation that the courts should avoid such a construction of a statute as will lead to absurdity or manifest injustice.

SUBMISSION of a controversy upon an agreed statement of facts, pursuant to section 1279 of the Code of Civil Procedure.

The stipulated facts in this case are briefly these :

The defendant is a live stock insurance company, organized upon the co-operative or assessment plan, under article VIII of chapter 690 of the Laws of 1892, with its principal office in the city of Buffalo.

On the 2d day of September, 1895, it issued its policy, or contract of insurance, in due form to the plaintiff, whereby, in consideration of the sum of thirteen dollars entrance fee, and the advance payment by the plaintiff of eight dollars and fifty cents for the mortuary, expense and reserve funds, and certain other agreements and conditions set forth in the policy, it insured for the term of three years the life of a certain valuable horse, called " General Ewell," the property of the plaintiff, and in such contract agreed that, upon receiving satisfactory proofs of the death of the horse, at any time within the above-mentioned term, it would pay to the plaintiff, his executors or assigns, the sum of $400, from its mortuary fund, within ten days after the approval of the claim by its executive board.

On the 4th day of April, 1896, while in one of the Buffalo Driving Park buildings, in the city of Buffalo, the horse " General Ewell " was burned to death without any fault on the part of the plaintiff.

The plaintiff at once notified the defendant of the death of his horse, and of the manner in which such death occurred, which notification was followed by timely proofs of loss in due form. Upon receipt of these proofs of loss the defendant refused payment, solely upon the ground that its contract covered only such risks as are incident to domestic animals, other than those caused by fire.

*S. E. Filkins,* for the plaintiff.

*W. H. Stoddard,* for the defendant.

ADAMS, J. :

The single question which this court is called upon to determine, while, apparently, a very simple one, is, nevertheless, one well calculated to provoke discussion, and, possibly, a contrariety of opinion when a satisfactory solution is attempted.

This difficulty arises from the fact that such an attempt necessarily involves a construction of the intent and purpose of the Legislature, as manifested in several concurrent and related statutory provisions.

If, in our endeavor to determine the controversy which has arisen between these parties, we were permitted to confine our investigation to the particular article under which the defendant derives its existence and authority to transact business, we should be relieved from much of the embarrassment which surrounds the case. For, if this article stood by itself and was unaffected by the provisions of other articles which precede or follow the same, it would hardly be claimed that its language was so vague or ambiguous as to be capable of more than one construction.

By referring to the 1st section of article 8, it will be discovered that its object, plan and scope are clearly defined in the following words, viz. : " Nine or more persons may become a corporation for the purposes of insuring the *lives* of domestic animals upon the co-operative or assessment plan of insurance," etc. (Laws of 1892, chap. 690, art. 8, § 250.)

And further investigation will disclose the fact that the remainder of the article contains absolutely no qualifying language which limits the hazards insured against to those which are supposed to be peculiarly incident to the particular character of property mentioned.

The obvious design of this article is easily ascertained, therefore, by adopting the well-settled rule of construction that corporations may exercise such powers as can be fairly implied, as well as such as are expressly conferred by the statute creating them (*Le Couteulx* v. *City of Buffalo*, 33 N. Y. 333 ; *Huntington* v. *Savings Bank*, 96 U. S. 388); for, inasmuch as the section from which we have just quoted expressly authorizes the defendant to insure the lives of domestic animals, without any limitation as to the cause of their death, the implication naturally arises, treating this as an independent statute, that any cause which produces such death, whether it be disease, accident, inherent tendencies of the animals, or fire, is embraced within the risk assumed. Our attention, however, is directed to the fact that article 8 is but a fragment of the Insurance Law of this State, which was revised and codified by the Legislature

in 1892; and it is insisted that each separate article thereof is to be so interpreted as to harmonize the same with the general intention of the act as an entirety.

It is undoubtedly true that chapter 690 of the Laws of 1892 was designed by the Legislature to systematize and simplify the Insurance Law of the State. To that end, very many of the existing statutes relating to the subject were either amended or repealed, and, as a final result of this effort in the direction suggested, we now have a system of law upon the subject of insurance, which is, perhaps, as perfect and complete as could possibly be formulated without the test of experience.

The law as thus revised, is subdivided into ten separate articles, the first and last of which contain general and miscellaneous provisions, and the other eight relate to the formation of insurance corporations for certain specified objects and under various distinct systems.

For the purpose of this submission it will be necessary to consider articles 3 and 9 only in their relation to article 8, as the remaining articles cannot have any legitimate bearing upon the question at issue.

Article 3 is designed to authorize the formation of stock companies to insure all kinds of property against loss or damage by fire, lightning and other risks therein specifically mentioned. It also provides for the formation of mutual insurance companies, but upon a plan which makes them virtually stock companies. The plaintiff could undoubtedly have insured his horse as " property " in a company organized upon this plan, and thereby have secured to himself an indemnity for a loss resulting from fire, but had he done so he would have deprived himself of the co-operative features of the company in which he elected to place the risk, and the indemnity thereby secured would have been confined to a death occasioned by " fire, lightning, winds, storms or tornadoes."

Article 9 relates to town and county co-operative insurance companies, and is designed primarily to afford insurance against larceny of domestic animals, wagons, sleighs, harnesses, robes, etc., although it does contemplate the insurance of town and county property, including live stock, against loss or damage by fire or lightning.

If organized for the latter purpose, however, the company is

expressly limited by section 266 of this article, in its insurance of animals to such as are owned upon the premises where the fire occurs.

Thus, it will be seen, that if the plaintiff had insured his horse in a company organized under the provisions of article 3, he would have obtained no indemnity for any risks incurred, save such as are therein specifically mentioned, while if he had insured in a company organized under article 9, he would likewise have been limited in the indemnity obtained to a loss resulting from either theft, fire or lightning upon his own premises. As a matter of fact, the horse in question was destroyed by fire in one of the buildings of the Buffalo Driving Park Association, so that if he had been insured in a town or county co-operative insurance company, the plaintiff would have been remediless.

This fact, of itself, seems to be sufficient to show that there is nothing in the provisions of article 9 which is in conflict with the construction which the plaintiff seeks to have given to article 8, and we also think that, for the reason already pointed out, the same may be said of article 3.

It is a canon of statutory interpretation that the courts should avoid such a construction as will lead to absurdity or manifest injustice (*People* v. *Jaehne*, 103 N. Y. 182, 197; *Western* v. *The Genesee Mutual Insurance Co.*, 12 id. 258); and, for the reasons stated above, we are clearly of the opinion that it would be a very plain violation of this rule to hold that the Legislature, when in general terms it conferred power upon a co-operative corporation to insure the lives of domestic animals, intended that such insurance should operate only as against losses which are regarded as incident to such animals, other than fire, because the owner, upon certain conditions which might not be satisfactory to him, could have obtained insurance against the last-named risk in a company conducted upon some other and very different system.

We conclude, therefore, that the plaintiff is entitled to judgment for the sum of $400, with interest thereon from June 1, 1896, together with the costs of this submission.

All concurred.

Judgment ordered in favor of the plaintiff for the sum of $400, with interest thereon from June 1, 1896, together with costs.