THE STATE ex rel. ELLIOTT W. MAJOR, Attorney-General, v. GERMAN MUTUAL LIFE INSURANCE COMPANY et al.

In Banc, November 29, 1909.

1. **CORPORATION: Perpetual Succession.** The general rule is that where a special legislative act creating a corporation used the term "perpetual succession" to indicate the life of the charter, it implies nothing more than the continuance of succession during the existence of the company; which, in the absence of some provision to the contrary, is for the period of twenty or other number of years designated by the general corporation law then in force. But this rule is not universal in its application, nor without exception.

2. ————: ————: **Exception: Life Insurance Company.** Where the special legislative act creating a life insurance company granted it in 1857 a right to perpetual succession, and the gen-

eral corporation statutes then in force granted to corporations a corporate existence "for the period limited in its charter, and when no period is limited, for twenty years," and the company was given authority by its special charter to issue insurance policies payable on the death of the policyholders, and it issues such policies, and many of them were in force at the time the twenty-year period expired and some of them are yet in force, it could not have been the legislative intention to limit the corporate existence of the company to twenty years, and in such case the legislative intention should control, and the company and its trustees should not be ousted of its franchises.

3. ———: ———: **Life Insurance Companies.** The manifest intention of the General Assembly in creating by special legislative act a life insurance company, and giving it the right to perpetual succession, and giving it power to issue policies payable upon the death of the policy-holder, and policies entitling the insured to annuities during life, and endowment policies payable at fixed times in the future, was to give to it an everlasting existence; and the company having issued such policies and being still in the exercise of its franchise, cannot be deprived of its charter under the general law limiting "corporations as such" to an existence of twenty years.

## Quo Warranto.

WRIT OF OUSTER DENIED.

*Elliott W. Major*, Attorney-General, and *Jno. M. Atkinson*, Assistant Attorney-General, for relator.

(1) The term "perpetual succession," as used in the special act creating respondent insurance company, implied nothing more than a continuance of succession during the existence of said insurance company, which was for twenty years, as provided by the general corporation laws then in force. R. S. 1855, sec. 1, p. 369 (Now sec. 971, R. S. 1899.); State ex rel. v. Road Co., 207 Mo. 73, 101; State ex rel. v. Payne, 129 Mo. 468; State ex rel. v. Ladies of Sacred Heart, 99 Mo. 533; State ex rel. v. Lesueur, 141 Mo. 29; State ex rel. v. Road Co., 138 Mo. 332; Bradley v. Reppell, 133 Mo. 545; State ex rel. v. Road Co., 116 Mo. App. 175; 10 Cyc. 148. (2) The general corporation laws of the re-

vision of 1855, section 1, page 369, were in full force and effect at the date of the passage of said special acts, and provided, among other things, that "every corporation, as such, has power; first to have succession by its corporate name for the period limited in its charter, and when no period is limited, for twenty years." In State ex rel. v. Road Company, 207 Mo. l. c. 101, this Court in Banc, said: "This statute has been held to apply to all corporations except charitable and educational institutions and those in which the length of corporate existence is fixed in the charter itself." To the same effect are the following cases: State ex rel. v. Board of Trustees, 175 Mo. 53; State ex rel. v. Road Co., 138 Mo. 332. (3) No length of corporate existence of respondent insurance company being fixed in its charter, and not being an educational institution, it at last lays claim of being a "charitable institution," and seeks to save its charter on that ground. By section 20 of its charter it is provided that the profits of said respondent insurance company shall be divided at the end of each five years. It is admitted that respondent insurance company does a general old-line life insurance business for a profit. It conducts its business in the usual way of old-line life insurance companies and is subject to the same laws of taxation and regulation as other old-line life insurance companies doing business in this state. It is conducting its business as a business corporation, and not as a benevolent institution. It cannot be seriously contended that respondent insurance company is a charitable institution. State ex rel. v. Vandiver, 213 Mo. 197; Westerman v. Supreme Lodge, K. of P., 196 Mo. 700. (4) In the construction of the special charter of respondent insurance company, every doubt is to be resolved in favor of the State. Clark and Marshall, Private Corp. sec. 127b, p. 379; sec. 127b, p. 383; State ex rel. v. Payne, supra.

*Jones, Jones, Hocker & Davis* and *Walther & Muench* for respondents.

(1) "In construing a charter or general corporation law for the purpose of determining the intention of the Legislature, the act must be construed as a whole, and if possible all parts of it must be harmonized. The construction should always be reasonable." Clark and Marshall on Corporations, sec. 127 b-4; 4 Thompson on Cor., sec. 5656; Endlich on Interpretation of Stats., secs. 73, 76, 103, 245; U. S. v. Railroad, 150 U. S. 2. (2) In examining the statutes it should be noted that the article of the general incorporation laws, which relates to manufacturing and business corporations, fixes the maximum time for which such a corporation can be formed at fifty years; but in the general statutes relating to life insurance companies there is no limitation whatever. The absence of such a limitation evidences the recognition by the Legislature of the fact that a life insurance company, unlike an ordinary business corporation, cannot fulfill the purposes of its formation in a short period of time, but should be endowed with everlasting existence. Sec. 3, Chap. 34, R. S. 1855, p. 369; State ex rel. v. Vandiver, 213 Mo. 18. (3) When the charter does not indicate the duration of the corporation, then the 20-year statute applies to and limits its duration, but when the object and purpose of the corporation and the terms employed in creating it indicate a legislative purpose to give the corporation a longer life (perpetual or otherwise), the legislative intent controls and the 20-year statute is not applicable. State ex rel. v. Board of Trustees, 175 Mo. 52; Fairchild v. Masonic Hall Ass'n, 71 Mo. 526. (4) "A charter of a private corporation is a contract between the State granting it and the incorporators." 7 Am. and Eng. Ency. Law, p. 667; Sloan v. Railroad, 61 Mo. 24; State ex rel. v. Greer, 78 Mo. 188. "If a contract is ambiguous in meaning,

the particular construction put upon it by the parties thereto is of great weight.'' Page on Contracts, sec. 1126; Governor, Opinion of Court in Response to, 49 Mo. 216; Insurance Co. v. Hoge, 21 How. (U. S.) 35; State ex rel. v. Bridge Co., 206 Mo. 74; U. S. v. Furwell, 185 N! Y. 236; Gaslight Co. v. St. Louis, 46 Mo. 121; Vincennes v. Gas Co., 132 Ind. 144.

WOODSON, J.—This is an original proceeding in the nature of *quo warranto,* instituted in this court by the Attorney-General, at his own relation, against the German Mutual Life Insurance Company of St. Louis and its board of trustees, by which they are charged with the usurpation of the rights, privileges and franchises of a corporation, and are asked to show by what authority they exercise the same.

Respondents filed their return, justifying their conduct in the premises on the ground that the act of their incorporation, approved November 23, 1857, and amended February 5, 1864, granted unto them a perpetual franchise. These acts are found in Session Laws of 1857 (adjourned session), p. 459, and 1863-4 (adjourned session), p. 357.

The reply of the Attorney-General is virtually a demurrer to the return.

The material parts of said acts of incorporation read as follows:

''Section 1. A life insurance company is hereby incorporated, . . . . to be called the German Mutual Life Insurance Company of St. Louis.

''Sec. 2. The corporation hereby created shall have perpetual succession.

''Sec. 3. The corporation hereby created shall have power to make insurances predicated upon the lives of persons, and all and every insurance appertaining to and connected with life risks of whatever kind or nature, and to receive and execute trusts, to make endowments, and to grant and purchase annui-

ties . . . . and to make contracts upon any and all conditions appertaining to or connected with life risks.

"Sec. 8. The corporate power of said company shall be vested in sixteen trustees, etc.

"Sec. 20. At the end of every period of five years each member shall be credited with his equitable proportion of the profits of the company."

By section 2 of the act of the Legislature, approved February 5, 1864, amending the charter, it is provided that every policyholder shall be a member of the company "as long as such policy remains in force." Said act also provided that sections 7 and 13 of the General Corporation Law then in force should not apply to this company, which sections read as follows:

"Section 7. The charter of every corporation that shall hereafter be granted by the Legislature, shall be subject to alteration, suspension and repeal, in the discretion of the Legislature.

"Section 13. In all corporations hereafter created by the Legislature, unless otherwise specified in their charter, in case of deficiency of corporate property or estate, liable to execution, the individual property rights and credits of every member of the co-partnership, or body politic, having a share or shares therein, shall be liable to be taken on execution, to an additional amount, equal to that of the amount of his stock, and no more, for all debts of the corporation contracted during his ownership of such stock; and such liability shall continue, notwithstanding any subsequent transfer of such stock, for the term of one year after the record of the transfer thereof on the books of the corporation, and for the term of six months, after judgment recovered against such corporation, in any suit commenced within the year aforesaid: Provided, that in every such case, the officer holding the execution shall first ascertain and certify upon such execution, that he cannot find corporate property or estate." R. S. 1855, chap. 34, pp. 371-2.

Section 1, Revised Statutes 1855, chap. 34, p. 369, provided as follows: "Every corporation, as such, has power: First, to have succession by its corporate name, for the period limited in its charter, and when no period is limited, for twenty years." [Now sec. 971, R. S. 1899.]

The return also shows that shortly after the passage of the original act, the incorporators organized and established the German Mutual Life Insurance Company of St. Louis, and they and their successors, respondents in this proceeding, have continued ever since to operate a life insurance company under that name; and that it has issued many thousands of policies to its members, insuring them on the several plans or methods customary to the conduct of a life insurance company, to-wit, contracts by which the sum insured is payable only on the death of the member or policyholder, in consideration for which he pays stipulated premiums. Under many forms of such policies he continues to pay these premiums throughout life, and under other forms he pays premiums for a limited number of years and then the premium paying period ceases, although the company is not required to pay the amount insured until his death shall occur. The company has also issued what is known as term insurance policies in consideration of premiums paid during a given term of years and agrees to pay the amount insured only if death should occur within a limited number of years. It has also issued endowment policies, by which it agrees, for certain premiums stipulated in the policy, to pay the amount insured at a fixed time in the future when the insured reaches a given age, or earlier, in case of his prior death. It has also issued annuities, by which, in consideration of certain premiums, it agrees to pay certain annual or other periodical amounts so long as the insured or annuitant shall live.

These several forms of policies were in general

use and issued by other life insurance companies at the time this charter was granted; and as to all of these policies the company has, from time to time, set apart from the premium paid to it and from other sources a reserved fund payable to each particular policy when it shall mature.

The return also shows that many of the policies which were issued during the earlier years of the company's existence are still in force and there are still outstanding one hundred and twenty-seven policies which were issued during that twenty years, aggregating $123,040.25, by the terms of which the company is still obligated to pay the same to such policyholders or to their representatives when they shall die.

It is further shown that at the expiration of twenty years from the date of the charter, the company had in force six hundred and twenty-seven separate policies representing outstanding insurance of $957,977.95; and since the expiration of twenty years from the date of the charter, the company has paid out to its policyholders the sum of $525,420.60 upon policies which were issued during the first twenty years of its existence.

This record presents but a single legal proposition for determination.

It is the contention of the Attorney-General, that, under section 1, article 1, chapter 34, of the Revised Statutes 1855, before set out, the charter of this company was limited to a period of twenty years from the date of its incorporation, and that since that date, viz., November 23rd, 1877, it has unlawfully exercised the rights, privileges and franchises of a corporation. This contention is denied by counsel for respondents; and they maintain that the act incorporating the company grants to it a charter perpetual in character.

The general rule is, as contended for by the Attorney-General, that where a special act creating a corporation uses the term "perpetual succession" in connec-

tion with the charter, it implies nothing more than a continuance of succession during the existence of the company, which, in the absence of some special provision to the contrary, is for a period of twenty years, as provided for by the general corporation law which was then in force. This rule of construction has been announced by this court many times in the following, among other cases: R. S. 1855, sec. 1, p. 369; State ex rel. v. Road Co., 207 Mo. l. c. 73-4; State ex rel. v. Road Co., 207 Mo. l. c. 101-2; State ex rel. v. Payne, 129 Mo. 468; State ex rel. v. Ladies Sacred Heart, 99 Mo. 533; State ex rel. v. Lesueur, 141 Mo. 29; State ex rel. v. Road Co., 138 Mo. 332; Bradley v. Reppell, 133 Mo. 545. Also by the Court of Appeals in State ex rel. v. Road Co., 116 Mo. App. 175. See also 10 Cyc. 148.

If this rule was universal in its application, and without exception, then clearly the contention of the Attorney-General would be unanswerable, and the only remaining thing to be done would be to enter a decree of ouster against respondents in accordance with the prayer of the writ. In fact, we do not understand counsel for respondents to controvert the soundness of the rule as above stated, but they insist that this rule does not apply where it leads to a result manifestly against the object of the enactment, and the purpose the Legislature had in view.

Judge Thompson in his work on corporations, sec. 5656, states the rule to be, as contended for by respondents, in the following language: "The prime effort of all judicial interpretation is to ascertain what the Legislature really intended in using the particular language."

And Endlich on Interpretation of Statutes states the rule as follows: "Sec. 73. Words of a statute are to be understood in the sense in which they best harmonize with the subject of the enactment and the object which the Legislature has in view. Their meaning is found not so much in a strictly grammatical or etymo-

logical propriety of language, nor even in its popular use, as in the subject or in the occasion on which they are used, and the object to be attained.

"Sec. 76. In general, statutes are presumed to use words in their popular sense; *uti loquitur vulgus.* Hence, the technical meaning is rejected as soon as the judicial mind is satisfied that another is more agreeable to the object and intention.

"Sec. 103. When, for instance, the language in its usual meaning, falls short of the whole object of the Legislature, a more extended meaning may be attributed to it, if fairly susceptible of it. The scope of the act being ascertained, the words are to be construed as including every case clearly within that object, if they can do so by any reasonable construction, although they point primarily to another or a more limited class of cases.

"Sec. 245. In determining either what was the general object of the Legislature, or the meaning of its language in any particular passage, it is obvious that the intention which appears to be most agreeable to convenience, reason and justice, should, in all cases open to doubt, be presumed to be the true one."

If we apply the former rule of interpretation to the act of incorporating this company, then it would be impossible for it to carry out and fulfill the purposes of its formation, for the reason that life policies may and do remain unmatured and outstanding for a greater period than twenty years; but if the latter is to govern this case, then we endow the company with perpetual, that is, everlasting existence, which would fully enable it to accomplish the objects and purposes of its creation. The special act in question authorizes the company to transact a general life insurance business, and to issue the various kinds of policies before mentioned, many of which the Legislature knew would not mature and become payable until long after the expiration of twenty years from and after the date of

the incorporation. In truth, this record discloses the fact that at the expiration of that period the company had outstanding and unmatured several hundred policies, amounting in round numbers to $1,000,000, and that there are still one hundred and twenty-seven of them outstanding, aggregating $123,040.25. If we accept relator's construction of this act, then all of these policies became nugatory on the 23rd day of November, 1877. To place such a construction upon the act would do violence to the clear object of the enactment and the manifest intention of the Legislature as disclosed by reading the entire act.

As was well said by the Supreme Court of the United States in the case of U. S. v. Railroad, 150 U. S. 2, "While it is well settled that public grants are to be construed strictly against the grantees, they are not to be so construed as to defeat the intention of the Legislature or to withhold what is given."

What was said by this court in the case of State ex rel. v. Ladies of Sacred Heart, 99 Mo. 533, applies equally as well to the facts of this case. In writing that opinion Judge BLACK, among other things, said:

"This charter is to be construed like any other written instrument. We must look for the intention of the parties. [1 Morawetz on Private Corps. (2 Ed.), secs. 316-323.] A corporation whose charter does not limit its existence to a definite period of time continues, in legal contemplation, until it has been dissolved by some prescribed method. Aside from the first paragraph of section 1 of the general law of 1845, this corporation would have succession without limitation as to time. Again, it is conceded on both sides that the respondent is a charitable institution, and nothing more. It is, therefore, in many respects unlike an ordinary business corporation having shareholders. Most of the provisions of the general law can have no application whatever to charters like the one now in question. The first section says: 'Every corporation as

such has power,' among other things, to make laws 'for the transfer of its stock.' The next section says: 'The powers enumerated in the preceding section shall vest in every corporation that shall hereafter be created, although they may not be specified in its charter,' etc. This provision in relation to stock has no application to this corporation; for it has, and under its charter can have, no shareholders. The same is true in respect of many other of the subsequent sections. It is, therefore, clear that though the general statute does say that every corporation shall have the designated powers, we must look to the objects and purposes of the particular corporation to see whether it does or can possess all of them. We see no reason why we may not also look to the objects and purposes of the corporation to see whether the limitation of twenty years fairly applies to it. Now, it can hardly be believed that the Legislature, in creating this corporation for the purposes, in part at least, of rearing and educating orphans, designed to limit it to twenty years. Such an institution with such a limitation would end about as soon as fairly established. If this charter contained the words 'perpetual succession' instead of simply the word 'succession,' then there would be no limitation as to time, notwithstanding the general law. It was so held in the case of a business corporation having a capital stock. [Fairchild v. Masonic Hall Assn., 71 Mo. 526.] The purposes of this corporation considered, it is believed we should reach the same result. If the charter on its face discloses a purpose to administer the Mullanphy trust, there could be no occasion for doubt, for the trust is practically perpetual. . . . . The charter bears evidence on its face of a determination on the part of the Legislature to make it perfect and complete in and of itself, and without reference to the general law. In view of these considerations, and of the objects and purposes for which the corporation was created, we conclude the Legislature intended to,

and did, give to it perpetual succession. This construction carries out what seems to have been the purpose of the Legislature; and it is enough to overcome the limitation in the general law, that it appears from the special charter, taken as a whole, and read like any other written instrument, that the Legislature designed to give it unlimited succession. Indeed, it is a matter of some doubt whether the twenty-year limitation in the law of 1845 applies to any purely charitable incorporated association.''

While Judge BLACK gave greater weight to the words ''perpetual succession'' than is warranted by the later cases of State ex rel. v. Payne, 129 Mo. 468, and State ex rel. v. Road Co., 207 Mo. 54, still the rule of construction announced by him in that case is sound and applies with great force to the facts of this case.

And it may with stronger reason be said in the case at bar, that it can hardly be believed that the Legislature in creating this corporation for the purpose of insuring lives of persons designed to limit its existence for a period of twenty years. Such an insurance company with such a limitation would expire, as is shown by this record, long before the maturity of many of the policies authorized by its charter to be issued during the twenty-year period of its existence, and thereby destroy the very insurance which the act contemplated should be issued and paid upon the death of the insured.

It may be truly said that life insurance companies are not founded with a view of being maintained for a brief period only, or for any limited time. Their nature and purpose denote perpetuity, and without which it would not be reasonable to suppose men of affairs would organize such companies or invest their money in the same as a protection for their families if they thought such companies might, and in all probability would, be dissolved long prior to the time when their policies would mature and become payable.

These observations are supported by the cases of State ex rel. v. Lesueur, 141 Mo. 29, and State ex rel. v. Trustees of Westminster College, 175 Mo. 52.

So viewing this case in the light of both reason and authority, we are clearly of the opinion that the intention of the Legislature was to make this charter perpetual—that is, everlasting.

We are, therefore, of the opinion that a dissolution of the corporation should be denied; and it is so ordered. All concur.