George W. Whitehead, Appellant, v. Farmers' Fire & Lightning Mutual Insurance Company et al., Respondents.—60 S. W. (2d) 65.

Kansas City Court of Appeals. April 3, 1933.

*Chas. W. Shelton* and *George N. Davis* for appellant.

*Franklin & Franklin* and *Walter C. Goodson* for respondent.

BLAND, J.—This is an action for an injunction. Plaintiff is a policyholder in the defendant, Farmers' Fire & Lightning Mutual Insurance Company, of Macon county. The other defendants are officers and directors of that company. Plaintiff seeks to enjoin the transaction of insurance business by the defendant company outside of Macon county. The chancellor refused to issue a temporary restraining order and, on final hearing of the case, decreed that plaintiff was not entitled to any relief (except as to a matter not now material or in controversy). Plaintiff has appealed.

The facts show that defendant, Farmers' Fire & Lightning Mutual Insurance Company, of Macon county, was incorporated on November 7, 1924, for a period of ninety-nine years, under the provisions of section 5909, Revised Statutes 1889, as amended (see Laws 1891, p. 165), governing the incorporation and business of Farmers' Mutual Fire & Lightning Insurance Companies.

Section 5909, Revised Statutes 1889, reads as follows:

"Hereafter all farmers' mutual fire insurance companies organized in this State for the sole purpose of mutually insuring the property of the members, and for the purpose of paying any loss incurred by any members thereof, by assessment, as provided by their constitution and by-laws, are hereby exempt from the provisions of this chapter as applicable to general insurance companies, and nothing therein shall be so construed as to impair or in any manner interfere with any of the rights or privileges of any such companies doing a mutual insurance business in this State as herein provided: *Provided*, that such companies shall do business only in the counties in which they are organized; *and provided further*, that any member of any such company may sue such company the same as if he were not a member thereof; and any such mutual fire insurance company may incorporate by filing a copy of its constitution, by-laws, and a sworn statement of the amount insured, with the assessed value thereof, with the Secretary of State, and paving the sum of ten dollars into the State treasury. (New Section.)"

Thus it will be seen that the law under which the company was incorporated provided that corporations organized under it "shall do business only in the county in which they are organized." The statute was again amended (see Laws of 1919, p. 384) so as to read as follows: "That such companies shall do business only in counties in which they are organized and in adjoining counties; *provided that no company now organized including only one county can come under the provisions of this act or insure property in an adjoining county.*" (Italics ours.) In 1927 (see Laws of 1927, p. 282) the statute was again amended by the insertion of a provision permitting such companies to levy an assessment for anticipated losses for the year next following the date of the assessment, but remained and now remains unaltered in respect as to where such companies shall do business.

In 1927 the defendant company sought to come within the provisions of the amendment of 1919 (see also section 6464, R. S. 1919). At a meeting of the board of directors held on October 18th of that year the secretary of the company was authorized to proceed to Jefferson City with certain papers to be presented to the Secretary of State by which it was sought to obtain the power to insure property in adjoining counties. Upon these papers, the secretary procured from the Secretary of State a new charter. This charter was obtained upon papers which were a copy of the articles of incorporation and the by-laws already existing. They included the names of the nineteen original incorporators. Many of these persons were unknown to the present secretary, who was the same person who procured the new charter from the Secretary of State

in 1927. Presumably many of the original incorporators were dead in 1927, or had moved from the vicinity. The new articles of incorporation, being a copy of the original articles, did not provide, at least in terms, that the new company should have the power to insure property in adjoining counties to Macon. There is no evidence or claim that the new incorporation was made with the knowledge or consent of the policyholders, who, on account of this being a mutual company, were its stockholders.

After obtaining the new charter the company proceeded as before. There was no change in the method of doing business, except that insurance was written in adjoining counties to that of Macon; there was no change in the directors; there was no change in the language of the policies issued except that the secretary thereafter placed upon them the words, "Re-Chartered————October 19, 1927, under section 6464, Article 17, Chapter 30, Laws of Missouri, 1927." There was no liquidation of the old company and no transfer of its assets to the new company. In other words, the business of the company proceeded as formerly, except, as before stated, the company began to write insurance in adjoining counties.

On October 3, 1931, at the annual meeting of the stockholders the constitution and the by-laws of the company were amended, which amendments were approved at the meeting of the board of directors held on October 10, 1931. The new or amended constitution and by-laws provided that the company should anticipate losses for the year next following the date of the assessment and that the company should have the right to do business in Macon county and *"in adjoining counties."* This latter amendment consisted of the addition of the words "in adjoining counties."

The facts further show that on October 12, 1931, at the time of the filing of this suit, plaintiff had been a member and policyholder in the company for a period of twenty-eight years, holding fire and lightning insurance policies upon his property located in Macon County, where he resided. As the maximum length of time that defendant wrote policies was five years, plaintiff was required to renew his policies at the expiration of such periods, which he did for twenty-eight years. The last policy that was issued to plaintiff was upon the 7th day of November, 1930, in the amount of $3800. It ran for a period of five years. The policy had stamped upon it the words: "Re-Chartered————October 19, 1927, under section 6464, Article 17, Chapter 30, Laws of Missouri, 1927."

After its original incorporation the company prospered. A large amount of insurance was written in Macon County. A surplus was built up out of which the defendant company acquired a general office building in the City of Macon.

Plaintiff testified that he had knowledge that *a* Farmers' Fire & Lightning Mutual Insurance Company was insuring property in adjoining counties to that of Macon, but that he did not know that *this* company was doing so until the annual meeting of the policy holders held on October 3, 1931. The evidence shows that the new or amended constitution and by-laws were adopted at this meeting by a vote of 35 for and 14 against, plaintiff's vote being cast in the negative. The evidence further shows that plaintiff, while a member of the company, attended and participated in its stockholders' or policy holders' meetings.

The new charter granted in 1927, upon its face, would appear to be the organization of a new company, but defendants insist that it amounted merely to a re-charter or re-incorporation or, in other words, a re-organizing of the old or then existing company and that it was unnecessary to place in the articles of incorporation the words "and in adjoining counties," in order to give the company the right to insure property in adjoining counties to Macon, for the reason that the company "having complied with the Laws 1919, Section 6464, R. S. 1919, . . . had the power, under the law, to write insurance in adjoining counties."

Ordinarily the re-incorporation or re-organization of a company is intended to terminate its existence and to operate as a dissolution of the old corporation. [8 Thompson on Corporations (3 Ed.), p. 17.] However, brushing aside the question of what was done in this instance and looking only to what was evidently intended to be done, it would appear to us that it was the purpose to *amend* the articles of incorporation of the old company so as to permit it to do business in adjoining counties to Macon county. [14 C. J., pp. 194, 195, 197; Hope Mut. Fire Ins. Co. v. Beckman, 47 Mo. 93; Grand River College v. Robertson, 67 Mo. App. 329.]

Whatever the intention may have been we think that nothing was accomplished, from a legal standpoint, by the new corporation and that the old corporation continued to exist with all of its powers and rights, and no more, as well as its duties and liabilities. Waiving aside the question as to whether a corporation may re-incorporate, re-charter, or amend, in a material way, its charter without the unanimous consent of its stockholders, the company, in no event, had any right to amend its charter or laws in a material manner without statutory authority and none has been given in our statute, at any time in its history, to so do, as was attempted in this case. [Doe Run Lead Co. v. Maynard, 283 Mo. 646, 683; Tanner v. Ry. Co., 180 Mo. 1, 2; State ex rel. v. Steel, 37 Minn. 428; People ex rel. v. James, 39 N. Y. S. 313, 320; 8 Thompson on Corporations (3 Ed.), pp. 11, 12.] The statute not only did not give such authority but expressly

provided that "no company now organized including only one county can come under the provisions of this article or insure property in an adjoining county." This is not only provided by the Laws of 1919, page 385, but also by the Laws of 1927, page 282, and the present statute. It goes without saying that the attempted amendment of its charter and by-laws undertaken in 1927 and 1931, by the defendant company, in violation of the statute, was of a fundamental, radical and vital character and cannot be tolerated. [See Johnson v. Tribune-Herald Co., 155 Ga. 204; Nugent v. The Supervisors, 19 Wallace, 241, 251.]

However, defendants contend that the statute now before us refers to Farmers' Mutual Fire . . . insurance companies four times, before it refers to them in the clause allowing their incorporation, and that we cannot give the meaning of "old companies," or those already incorporated, to the first four and "new companies," or ones being newly organized, to the fifth. In other words, defendants say that the companies referred to in the incorporation clause includes both old and new. A history of this statute will throw some light on their contention.

Prior to the adoption of the statute in 1889, there existed in this State voluntary associations engaged exclusively in insuring the property of farmers. There also existed such companies incorporated under the Laws of 1874, governing "local insurance companies." It was held in the case of Boone County Ins. Co. v. Anthony, 68 Mo. App. 424, that the statute of 1889 reenacted the provisions of the Laws of 1874 exempting insurance companies organized under that law from the general insurance laws.

It is quite plain from a reading of the statute of 1889 that one of its main objects was to permit a voluntary organization, of the kind to which we have referred, to become a corporation "by filing a copy of its constitution, by-laws and a sworn statement of the amount insured, with the assessed value thereof, with the secretary of state and paying the sum of $10 into the State treasury." However, the statute expressly indicated an intention not to *require* such voluntary associations to incorporate because it provided that nothing therein should be "so construed as to impair or in any manner interfere with any rights or privileges of any such companies doing a mutual insurance business in this State," and provided that "any member of any such company may sue such company the same as if he were not a member thereof."

There are still in this State voluntary unincorporated farmers' mutual fire insurance companies (see Marsden v. Williams, 282 S. W. 478) and the foregoing provisions of the statute of 1889 have been retained to this date except in 1891 (see Laws of 1891, p. 165) the requirement that companies desiring to incorporate should file a sworn statement of the amount insured, with the assessed value

thereof, was stricken out. The only additions made by the Legislature to the statute since its enactment was the one made in 1919, when that part of the statute confining such companies to the county of their organization, was changed to read, "provided that such companies shall do business only in counties in which they are organized and in adjoining counties, provided that no company now organized including only one county can come under the provisions of this article or insure property in an adjoining county" and, in 1927, when such companies were given the right to make assessments "for anticipated losses for the year next following the date of the assessment."

So we have, today, a statute covering and referring to both incorporated and unincorporated farmers' mutual fire insurance companies, and providing an easy way for such unincorporated companies to incorporate. The clause in the statute allowing the incorporation of voluntary companies no doubt is broad enough to allow for the incorporation of entirely new companies as well as existing voluntary associations.

So, after reviewing the history of the statute in controversy we find that in some places in it the words "such . . . company" and "such companies" refer to "old" as well as "new" companies but not always to both classes of "old" companies. For instance, the reference to a member suing "such company" means a voluntary company or association for there is no statutory authority needed for a stockholder or member of a corporation to sue it, but this was not so as to voluntary associations in 1889. [State ex rel. v. Lee, 288 Mo. 679, 703.] So coming to the words "such . . . company," contained in the incorporation clause, when the statute was first enacted those words referred, primarily, if not exclusively, to existing voluntary associations, as it provided for the filing of "a sworn statement of the amount insured, with the assessed value thereof" in procuring a charter from the Secretary of State. No "new" company would have any "amount insured" until after it was organized. The incorporation clause still includes those companies but there is no logical reason whatever for it to refer to companies *already incorporated,* such as this defendant was when it, in 1927, refiled its original constitution and by-laws. If the Legislature wanted to permit companies already incorporated to take advantage of the change of the law made in 1919, it could have provided simply for an amendment of the charter for that purpose. There would be no rhyme or reason to require an entirely new corporation, when there was one already existing. But instead of providing for an amendment of the charter so as to allow existing incorporated companies to insure in adjoining counties, or indicate that they might so do by merely amending their constitution and by-laws, as was done in 1927, when the law was changed permitting all farmers' mutual fire insurance companies to make assessments in anticipation of losses, it positively prohibited old or

existing companies, of whatever character, insuring in adjoining counties.

The purpose of the distinction made, in the amendment of 1919, between existing companies, incorporated or unincorporated, and companies thereafter to come into existence, in permitting the latter, but not the former, to insure in adjoining counties, is not expressed upon its face but seems fairly apparent. These companies are not organized for profit and from that standpoint it matters not to them what territorial field they may cover. But the cost of the insurance to the members would depend upon a great many things, including the character of the risk, not excluding the moral phase of it. When the amendment of 1919 was made none of these companies could insure outside of its own county. By confining the activity to one county all of the property insured was confined to one neighborhood or community where each member was, or could readily be known to the others. The same may be said as to the property of the members insured. To allow such companies to branch out into adjoining counties would be getting away, in a measure, from the idea of insurance among neighbors or members of one community and taking risks, with their attendant losses, in strange places and among strange people. This no doubt would be objectionable to many members of existing companies so the Legislature worded the amendment of 1919 so as to provide in a no uncertain way that no existing company of whatever character, incorporated or unincorporated, should branch out into adjoining counties when they had procured memberships upon the assumption that the insuring of property should be confined to one community, or one single county. As to new companies that might be organized after the statute was amended, its members could not complain that they had no notice, when they became members, of the intention of the company to insure property in adjoining counties.

The amendment of 1919 is awkwardly worded in that it says: "That no company now organized including only one county can come under the provisions of *this article.*" (Italics ours.) This refers to all companies then organized under that article as the statute had always confined these companies to one county. Taken literally, the clause above quoted would put an end to all companies then in existence whether incorporated or not. Of course, the Legislature did not intend this to be the effect of the amendment. The cardinal rule of statutory construction is that the intention of the Legislature in enacting it must be ascertained (59 C. J., p. 948), and the statute, as a whole, should be looked to in construing any part of it. [59 C. J., pp. 993, 994, 995.] "To determine the legislative intent in case of ambiguity resort may be had to the history of the statute." [59 C. J., p. 1017.]

In the case of State ex rel. v. Walker, 302 Mo. 116, the Supreme Court was put to the necessity of practically reconstructing a statute in order to give it a logical meaning. In that case the court said, l. c. 124:

"Cases may be found in our reports where entirely different words, and in fact words of exactly opposite meaning, have been held to have been intended in place of the word actually used, where the word used was clearly an error and would give an absurd or impossible meaning to the statute."

When we remember what was in the mind of the Legislature when the amendment of 1919 was made, that is, as already indicated, to forbid companies then in existence from insuring in adjoining counties, we think it is apparent, if it did not intend to put an end to all farmers' mutual insurance companies then in existence (which we have said it did not), it did two things: (1st) It said that it did not intend to provide that existing companies should have the right to insure property in an adjoining county and (2nd), for fear that some existing company might attempt *to amend its charter or laws* so as to permit it to so insure, it said that no existing company could even do that. If we substitute the words, "this amendment" for "this article" or insert the following words, after the word "article" "insofar as to permit it to insure property in an adjoining county" that would be the literal meaning expressed. Evidently the Legislature was not careful to use language that would accurately express its meaning because it could not have meant "this article" standing alone, when it used these words. No other reasonable meaning could be given them except that we have indicated above, it being the intention of the Legislature not to repeal the law applicable to existing companies providing as to where *they* should do business.

From what we have said it is apparent that defendant is without power to insure property in adjoining counties to that of Macon.

It was well said by this court in a recent case that where the law of the State forbids a corporation from performing certain acts, the laws of the corporation inconsistent with such law are utterly void. [State ex rel. v. Seehorn, 55 S. W. (2d) 714.]

However, it is claimed that plaintiff did not prove one of the allegations of his petition, to-wit:—that defendants were wasting and squandering the funds of the company in its business done outside of Macon county, the evidence showing that the business done by the company in other counties was profitable rather than done at a loss to the company. However, it is well settled that plaintiff is not required to prove every allegation in his petition, but only those that are necessary to a recovery or for the granting of relief. [Morgan v. Sunflower Zinc Co., 199 Mo. App. 26; Lampe v. United Rys. Co., 209

Mo. App. 357; Wessel v. Lavender, 262 Mo. 421; Freeman v. Wilson, 56 S. W. (2d) 845.] There is ample allegation in the petition to raise the question of the illegality of the act of the defendant company in writing insurance outside of Macon county. There is no doubt of the right of plaintiff to maintain this suit. The law is well stated in 6 Thompson on Comporations (3 Ed.), pages 504, 505, 507, as follows:

"A single stockholder has an undoubted right to maintain a suit in equity to restrain the directors from the consummation of a contemplated breach of trust or an act *ultra vires* of the corporation and he may have relief against such acts where they have been consummated. The remedy proceeds on one or both of the following grounds: 1. That the shareholders have the right to have the directors restrained from doing a threatened or contemplated act which would subject the franchise of the corporation to forfeiture at the suit of the government. 2. That they have the right to have them restrained from applying funds of the corporation to objects other than those warranted by the governing instrument of the corporation. But the acts of the directors must amount to a positive breach of trust. A court of equity will not control the discretion of the managing bodies of corporations though ill advised or apparently unprofitable to the stockholders. And the fact that illegal or fraudulent acts have been committed by the board of directors will not entitle a shareholder to injunction unless there is a threatened repetition of such action. *The shareholder has a clear right to an injunction to restrain the directors and agents of the corporation from employing its funds or property contrary to or in a manner not authorized by its charter, articles of association or the governing statutes, and this is the rule deducible from the authorities notwithstanding the fact that no loss would probably result to the corporation from the act, and there was no intention on the part of the directors to violate the law or commit a fraud. The reason is that these instruments form a part of the contract entered into between the stockholders and the corporation and makes and defines the limits within which they have agreed to employ the corporate funds. Each stockholder has a right to stand upon the contract and to see that the joint fund shall not be employed contrary to the contract and he has the right to the aid of a court of equity to prevent its misapplication without regard to his motives.*" (Italics ours.)

We have examined the authorities cited by the defendants and find them not in point.

It is claimed that, as the company is not losing money upon the business done outside of Macon county, plaintiff has not been damaged in a substantial manner and, is therefore, not entitled to maintain this suit. The company is the subject of the pains of an action

in *quo warranto* by the State of Missouri by reason of engaging in business in excess of its charter powers. [State ex rel. v. The La. Bowling Green & Ashley Gravel Road Co., 116 Mo. App. 175; 51 C. J., p. 321.] A very dangerous condition now overhangs the company and, for this reason, alone, plaintiff is entitled to protect his interest in the company so as to prevent the further exercise of unauthorized powers by it. It will be readily seen from the quotation we have just made from Thompson on Corporations that, under all of the circumstances, plaintiff is entitled to bring this suit.

It is also claimed that the only proper procedure to prevent the further exercise of the excessive powers in question, if any, by the corporation, is by the State through *quo warranto* and that an injunction is not the proper remedy. There is no merit in this contention. There is no law under which the company can, by any means, exercise the excessive powers that it has been indulging in and is threatening to do in the future. On the other hand, it is positively prohibited by statute to conduct the business in question. This is a mere case of *ultra vires* to correct which a stockholder may have injunction. [Huber v. Martin (Wis.), 105 N. W. 1031, 1042; 14 C. J., p. 199; 6 Thompson on Corporations (3 Ed.), pp. 504, 505, 507; Cherokee Iron Co. v. Jones, 52 Ga. 276; Atlanta Steel Co. v. Mynahan, 138 Ga. 668.] Although the company is also subject to a proceeding in *quo warranto.* [51 C. J., p. 321; State ex rel. v. Gravel Road Co., supra.]

Estoppel is not pleaded by defendants, nor is it raised by them in their brief, except in their argument they point out that plaintiff's present policy has indorsed thereon the words: ''Re-chartered——— October 19, 1927, under section 6464, Article 17, Chapter 30, Laws of Missouri, 1927.'' What specific information this conveyed to plaintiff is not argued in the brief. Plaintiff testified that he had no knowledge of the fact that the company was insuring property outside of Macon county until the stockholders' meeting held on October 3, 1931. This suit was filed on October 12, 1931, even before the new or amended constitution or by-laws adopted at that meeting were filed with the Secretary of State by the company. However, the doctrine of estoppel is not applicable in this case for the company is exercising charter powers prohibited by statute. [See Kent v. Quicksilver Mining Co., 78 N. Y. 159, 186.]

The judgment is reversed and the cause remanded. All concur.