TRADERS MUTUAL FIRE INSURANCE COMPANY, a Corporation, Respondent,

v.

C. Lawrence LEGGETT, Superintendent of the Division of Insurance of Missouri, and John M. Dalton, Attorney General of Missouri, Appellants.

No. 44367.

Supreme Court of Missouri.

Division No. 2.

Dec. 12, 1955.

John M. Dalton, Atty. Gen., Julian L. O'Malley, Asst. Atty. Gen., for appellants.

Johnson, Lucas, Bush & Gibson, Hilary A. Bush, Floyd R. Gibson, Fred A. Murdock, William A. Cameron, Kansas City, for respondent.

BARRETT, Commissioner.

This is an action by the Traders Mutual Fire Insurance Company for a declaratory judgment. The defendant-appellants are the Superintendent of the Division of Insurance and the Attorney General of Missouri. The Traders Mutual Fire Insurance Company is a town mutual insurance company, V.A.M.S. §§ 380.280–380.450, organized in 1923. The precise type of business the company engaged in throughout the years, or the success of its operations, does not plainly appear from the record. But apparently the company, more or less intermittently, conducted the traditional business of a town mutual insurance company, insuring houses and personal property against loss by fire, lightning and tornado at Independence. We say the company operated "intermittently" for the reason that in some years its charter was suspended or forfeited. But by 1933 its charter had been reinstated and the office of the company moved to Kansas City. It does not plainly appear, except from some general statements and the allegations of its petition, in what years, in addition to its traditional business, the company actually wrote insurance on automobiles, particularly that type of automobile insurance known as "comprehensive coverage." In any event, by 1951 the company claimed or asserted the right, in addition to its other business, to insure automobiles. In July 1953 the Superintendent of the Division of Insurance ordered the company to cease writing "physical property damage automobile insurance," asserting that the company had no power or authority to do so. Thereupon the company instituted this action for a declaratory judgment and to restrain the superintendent from enforcing his order. The superintendent and the attorney general prosecute this appeal from a judgment declaring that the company was authorized to write automobile insurance.

By reason of the general nature of the action and to precisely delimit the decision upon this appeal to the record and the single issue involved, certain other facts and some omissions from the record should be noted as not within the scope of this opinion. There were some conferences or negotiations between officers of the company and the insurance department concerning the company's writing automobile insurance. There were examinations of the company by the department and annual applications by the company for licenses and some of the applications were for "fire and allied lines" and some for "fire and extended coverage automobile physical damage insurance." There is in the record an excerpt from the minutes of an October 1953 board meeting relating to the classes of insurance the company wrote, "fire, extended coverage, automobile physical damage, including fire, theft, collision and comprehensive." But the company and its officers have not in point of fact amended or attempted to amend the constitution and by-laws in this respect. In 1945 the company secretary presented to the board of directors what he called "a plan" for writing automobile insurance, but it does not appear just what plan was adopted. There are no specimen policies in the record and the record does not reveal how or by what methods the company proposes to charge premiums, establish reserves, or in what territory it proposes to do business, or, in short, write comprehensive coverage on members' automobiles. As indicated, these matters were not in point of fact involved upon the trial of the cause and they are not involved upon this appeal.

It is claimed, by reason of its annual reports and the department's exam-

inations, that the department long had knowledge of the fact that the company was writing automobile insurance and that the department's knowledge and actions in these respects constituted an administrative construction of the statutes and the company's charter and should be given some weight indicative of the company's power to write that class of insurance. But aside from the meagerness of the record and the inconclusiveness of the facts shown, the knowledge or tacit consent of the department would not make the company's act of writing automobile insurance lawful if in point of fact the writing of such insurance was unauthorized and unlawful. State ex rel. Richards v. Manufacturers' Mutual Fire Ass'n, 50 Ohio St. 145, 151, 33 N.E. 401, 24 L.R.A. 252. Compare: Banker's Mutual Casualty Co. v. First Nat. Bank of Council Bluffs, 131 Iowa 456, 108 N.W. 1046.

According to its constitution and by-laws the company was organized under the provisions of Article XVIII, Sections 6469–6486, relating to "Town Mutual Insurance Companies", Chapter 50, R.S.1919, for the declared purpose, "To insure houses, tenements, merchandise, and all other property, real and personal, against loss or damage by fire, lightning, windstorm, tornado or cyclone, *or otherwise,* and to carry on the ordinary business of fire insurance in all its branches." Section 6204 of Article VI, Chapter 50, R.S.1919, relating to "Insurance Other Than Life", provided that, "All insurance companies authorized to transact fire insurance business in this state may, in addition to the business which they are now authorized by law to do, * * * also * * * make all kinds of insurance on automobiles, and all other cars and vehicles, including fire, theft, transportation, collision and property damage: * * *." Seizing upon the phrase "or otherwise" in its charter and the provisions of Section 6204 the company contends, as a part of its original charter, which the state may not abridge, V.A.M.S. § 380.280, that it was authorized and empowered to write comprehensive coverage on automobiles in addition to writing the

types or classes of insurance traditionally written by town mutual insurance companies. Thus the precise question for determination is presented. Relying upon the rule that a company's charter consists of the applicable statutes under which it was organized, 7 Fletcher, Cyclopedia of Corporations, Sec. 3635, p. 759, and certain auxiliary rules of statutory construction, the company claims that it was plainly empowered in 1923 by section 6204 to write automobile insurance. It will be noted that the statute says *"All insurance companies authorized to transact fire insurance business* in this state may, in addition to the business which they are now authorized by law to do, * * * also to make all kinds of insurance on automobiles."* The Traders Mutual Fire Insurance Company being, it is said, a fire insurance company and there being no legislative intent to the contrary, it was authorized, under this general statute to write automobile insurance, then and now. A casual consideration of the statutes would seem to sustain the company's contention, but the general rules relating to corporate charters and the auxiliary rules of statutory construction do not, upon closer analysis, so plainly resolve the question presented.

■ Contrasted with other insurance companies in general, particularly fire insurance companies, town, county and farm mutual insurance companies have occupied a rather unique, specialized position. Generally they have differed in basic theory, they were not organized for profit, conducted their business in very limited geographical areas upon the assessment plan, and traditionally have insured the real and personal property of their members only against the hazards of loss by fire, lightning and windstorm. Whitehead v. Farmers' Fire & Lightning Mut. Ins. Co., 227 Mo.App. 891, 898, 60 S.W.2d 65, 69; State ex rel. Richards v. Manufacturers' Mut. Fire Ass'n, 50 Ohio St. 145, 33 N.E. 401. In this connection, the history of the insurance statutes and the history of the chartering of strictly mutual insurance companies is of some significance. Prior to 1869 town mutual insurance companies, as

was the case with all corporate charters, were chartered by special acts of the legislature and those acts, of course, constituted the company's charter. From a large number of instances, two examples are sufficient for the purpose of illustration. Laws Mo. 1864–1865, pp. 190, 196. Prior to 1869 there had been some statutes relating to insurance but in 1869, for the first time, the insurance department was created, Laws 1869, p. 23, and detailed statutes were enacted relating to life insurance, Laws 1869, p. 26, and to insurance other than life. Laws 1869, p. 45. The latter statute specifically provided for and governed stock and mutual companies, but there were no provisions in those acts relating to town, county and farm mutual companies. Sections one and two of the act became and are not substantially different from sections 6203 and 6204, R.S.1919, or, for that matter, from sections 379.010 and 379.015 of the present statutes. It is not readily apparent how or under what authority town mutual insurance companies were organized between 1869 and 1899. There were statutes relating to "local insurance companies"—county mutuals, Laws Mo.1874, p. 90, and to voluntary associations engaged exclusively in the business of insuring the property of farmers, Whitehead v. Farmers' Fire & Lightning Mut. Ins. Co., 227 Mo.App., loc. cit. 896, 60 S.W.2d, loc. cit. 68, but there were no statutes specifically applicable to town mutual insurance companies.

■ There appeared for the first time in the Revised Statutes of 1899 a new article, Article XI, consisting of seventeen sections, sections 8084–8101, relating to town mutual insurance companies. That article and those sections, with some amendments, became Article XVIII, sections 6469–6485, R.S.1919. And, as stated in their charter, it was under those statutes that the company was organized; and those statutes became the company's charter and authorized it "to insure its members against damage or loss by fire, lightning or windstorms to property situated in any county in which such company is authorized to do an insurance business." Sec. 6473, R.S.1919.

The Traders Mutual Fire Insurance Company was not organized under Article VI, sections 6203–6248, R.S.1919, relating to "Insurance Other Than Life" and so we are not concerned with the classes of risks, hazards, or casualties the company could now insure had it been organized under those statutes, as was the case in Banker's Mut. Casualty Co. v. First Nat. Bank of Council Bluffs, 131 Iowa 456, 108 N.W. 1046. See also State ex rel. Spillman v. Federated Merchants Mut. Ins. Co., 117 Neb. 98, 219 N.W. 847; O'Grady v. New York Mut. Live-Stock Ins. Co., 16 App.Div. 567, 44 N.Y.S. 946. While this company was organized in 1923 under the statutes as they existed in 1919, it was in fact organized under the special law specifically providing for such companies in 1899. That subsequent special law relating to and dealing with town mutual insurance companies in detail prevails over or modifies the more general statutes relating to other fire insurance companies and is indicative of an intention or purpose to provide as far as possible an exclusive law dealing with that particular type company, certainly so as to its franchise or charter powers, even though section 6204 purports, at first blush, to be applicable to all fire insurance companies. City of St. Louis v. Life Ass'n of Amer., 53 Mo. 466; Haskell v. Sells, 14 Mo.App. 91; State ex rel. Major v. German Mutual Life Ins. Co., 224 Mo. 84, 123 S.W. 19; Western Commercial Travelers' Ass'n v. Tennent, 128 Mo.App. 541, 106 S.W. 1073; O'Malley v. Prudential Cas. & S. Co., 230 Mo.App. 935, 80 S.W.2d 896; Vining v. Probst, 239 Mo. App. 157, 186 S.W.2d 611. In this connection, as to the company's claim that section 6204, R.S.1919, was a part of its charter and authorized it to write insurance on automobiles, the fact was that prior to 1919 section 6203, not section 6204, contained the provision that companies organized for the purpose of insuring property against loss by fire could "make all kinds of insurance on automobiles", Sec. 6995, R.S.1909, Laws Mo.1919, p. 403, and it is not claimed that this company derived its charter power to write fire insurance under that section.

In 1919, as in 1899, Sec. 8084, R.S.1889, and now, V.A.M.S. § 380.290, *"all town mutual fire and lightning, tornado, windstorm or cyclone insurance companies* organized for the sole purpose of mutually insuring the property of its members against any loss incurred by them from fire, lightning or windstorm, as may be provided by its constitution and by-laws, and not inconsistent with the provisions of this article, *shall be exempt from all laws of the state of Missouri governing other insurance companies:* Provided, that such insurance companies shall be required to comply with all the conditions and requirements of section 6237 and 6238, article VI, and section 6386 of article XIV, chapter 50, Revised Statutes of Missouri, 1919." Sec. 6469, R.S.1919. Sections 6237 and 6238 relate to the subject of notice of loss and the furnishing of proofs of loss and are the only two sections from Article VI relating to "Insurance Other Than Life" specifically made applicable to town mutual insurance companies. Section 6386, R.S.1919, relates to the taxation of insurance companies. Definitions of what is said to be the key word in the statute, "exempt," are set forth and it is urged by the company that this section means that such companies are only exempt from those provisions of the insurance laws relating to other insurance companies of a *regulatory nature* and may not be construed so as to destroy the fact that a town mutual is a fire insurance company within the meaning of the plain provision of section 6204 that "All insurance companies authorized to transact fire insurance business in this state may * * * also * * * make all kinds of insurance on automobiles." The state contends that the force and effect of the exemption statute is that a town mutual insurance company has no "authority to go outside the statutes particularly applicable to it and take unto itself powers specifically delegated to other types of insurance companies which are formed under other provisions of the Insurance Code of Missouri." In our view it is not necessary to say whether this statute exempts mutual companies from so-called regulatory provisions only, or whether it

forces the conclusion that they may not resort to other statutes for certain purposes, as neither of these arguments plainly resolve the problem involved here. It is sufficient to say that town mutual companies are not exempt from the general rules of jurisprudence and substantive law. Everett v. Patrons' & Farmers' Mut. Fire Ins. Co., 222 Mo.App. 1010, 1018, 7 S.W.2d 463, 468. Up to the present time the statute has been construed to mean that the valued policy law, the statute fixing penalties for vexatious refusal to pay losses and the non-forfeiture provisions of the general life insurance law are not applicable to mutual companies. Warren v. Bankers' & Merchants' Town Mut. Ins. Co., 72 Mo.App. 188; Sappington v. St. Joseph Town Mut. Fire Ins. Co., 77 Mo. App. 270; Smoot v. Bankers' Life Ass'n, 138 Mo.App. 438, 120 S.W. 719. This statute and the cases arising under it do point out the fact that town mutual companies have received special, if not favorable, treatment and they do mean, at least to the extent indicated, that they are not to be governed by the general insurance laws.

There is another section in the town mutual insurance statutes significantly indicative of the state's general policy with respect to such companies, and that is section 380.280, V.A.M.S., as it was enacted in 1925, "No town mutual, fire, lightning, windstorm, tornado or cyclone insurance company may be incorporated under the provisions of this article after July 1st, 1925." Laws Mo.1925, p. 276. While this statute does not restrict or abridge this company's right to do business "under the provisions of this article", it is indicative of the trend or policy of the state to restrict the activities of such companies.

The construction of the charters of town mutual insurance companies, particularly with respect to their authority to insure particular hazards, is likewise of some significance in determining the purpose and application of all the statutes involved here. As contended by the com-

pany, its charter consists of the law under which it was organized and the articles of association adopted pursuant to the law. Western & Southern Life Ins. Co. v. New Madrid County Farmers' Mut. Fire Ins. Co., Mo.App., 99 S.W.2d 506, 509. However, the statutes, charter and articles of incorporation of a mutual insurance company are a limitation upon the powers of the company, 29 Am.Jur., Sec. 55, p. 87; 44 C.J.S., Insurance, §§ 105, 110(b), pp. 648, 664, and town or local mutual insurance companies have no power to do business, carry· risks, or effect insurance other than as specified in their charters and the applicable statutes. 1 Cooley, Briefs On Insurance, p. 864; 1 Couch, Cyclopedia of Insurance, Sec. 256, pp. 635, 638; 1 Joyce, The Law of Insurance, Secs. 350, 350(k), pp. 876, 886. For example, in Froehly v. North St. Louis Mutual Fire Ins. Co., 32 Mo.App. 302, a fire insurance policy had been in force for more than three years of its five-year term. The policy purported to insure Joseph Froehly's frame house against loss by fire in the sum of $1,200. The fact was that the land upon which the dwelling was located belonged to Joseph's wife, Mary. Joseph had no interest in the land and his insurable interest in the property resulted from the fact that the dwelling was built with his funds. After the policy had been in force for some time Joseph informed the agent of the facts and the agent attached a loss-payable clause to the policy in favor of Mary. The charter authorized the company to insure its *members* and *"their* respective dwelling houses" and the members, to assure the payment of assessments, gave the company a lien upon their property. The house was destroyed by .fire and Mary, as assignee, brought suit upon the policy. It was held that the defendant was a mutual insurance company and "that it was powerless to make any contract except such as by charter grant express, or necessarily implied, it was authorized to make." And despite Mr. Froehly's insurable interest and the company's knowledge it was held that no construction of the charter could confer power on the· company to insure one who was incapable of becoming a mem-

ber and incapable of conferring a lien on the company and that the policy was void in its inception. It would serve no useful purpose to multiply illustrations, but even in the absence of a provision expressly forbidding town mutuals from incurring certain risks Whitehead v. Farmers' Fire & Lightning Mut. Ins. Co., 227 Mo.App., loc. cit. 895–896, 60 S.W.2d, loc. cit. 68, it has been held that such companies may not insure against a hazard not expressly granted in its charter, or insure a risk not specifically enumerated, and that if they attempt to do so such policies are void. Andrews v. Union Mutual Fire Ins. Co., 37 Me. 256; Knapp v. North Wales Mut. Live Stock Ins. Co., 11 Montg.Co. Law Rep., Pa., 119; O'Neil v. Pleasant Prairie Mut. Fire Ins. Co., 71 Wis. 621, 38 N.W. 345; Delaware Farmers' Mut. Fire Ins. Co. v. Wagner, 56 Minn. 240, 57 N.W. 656; Rochester Ins. Co. v. Martin, 13 Minn. 59(Gil. 54). These cases were decided in a day when such companies were more popular and active than they are today, but they illustrate the special consideration given mutual companies and they particularly emphasize the limitations of their charter powers.

No one of the indicated factors is determinative or conclusive, but their combined force and effect illustrate a purpose or intention, Frankfurter, Some Reflections On The Reading Of Statutes, pp. 20–27, that a town mutual fire insurance company derives its charter powers from the statutes specifically relating to such companies and not, additionally, from one section of the statutes relating to other insurance companies. Considering the basic theory of town and county mutual insurance companies, the history of our statutes relating to the subject of insurance and particularly the specific statutes relating to such companies, as well as the construction heretofore given the statutes and the companies' charters, the inference and conclusion is compelled that section 6204, R.S.1919, was not a part of this company's charter and it was not authorized to write automobile insurance when it procured its· charter in 1923. Const.Mo.1875,

Article XII, Sec. 7, V.A.M.S. And the company not having had that right it follows as of course that the constitutional prohibition against impairing the obligation of contracts, Const.Mo.1875, Article II, Sec. 15, has not been infringed.

In accordance with these views the judgment is reversed and the cause remanded.

BOHLING and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the Court. All concur.